# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GAVLESTON

| | | |
|---|---|---|
| **VERONICA L. DAVIS** | § | |
| **JEFF KITCHEN, AND THE** | § | |
| **CHARLIE BROWN HERITAGE** | § | |
| **FOUNDATION** | § | |
| | § | |
| **VS.** | § | **NO.** |
| | § | |
| **LUMENS TECHNOLOGIES, INC** | § | |
| **CENTURYLINK** | § | |
| **DIRECTV AND AT & T** | § | |
| **CREDENCE MANAGEMENT AND** | § | |
| **SEQUEIM ASSET SOLUTIONS** | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

      **COMES NOW, VERONICA L. DAVIS**, and for cause of actions would show

the following:

      1.    Plaintiff, Veronica L. Davis[1], is a citizen of Texas, residing in West

Columbia, Texas, whose address is 226 N. Mattson, West Columbia, Texas 77486.

      2.    Plaintiff, Jeff Kitchen, is a citizen of Florida residing at 67 Fall Drive,

Port Orange, Florida 32129.

      3.    Plaintiff, Charlie Brown Heritage Foundation is a nonprofit

---

[1] All references to Plaintiff shall be to Veronica L. Davis. References to the other Plaintiffs will be designated as Plaintiff, followed by the name of same.

corporation, whose principal place of business is 301 W. Bernard Street, West Columbia, Texas 77486, but whose mailing address is 226 N. Mattson, West Columbia, Texas, 77486.

4.      Defendant, CenturyLink, Inc [2]is a Louisiana telecommunications corporation, headquartered in Monroe, Louisiana, whose address is 100 Century Link  Blvd, Monroe, Louisiana 71203.  Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas,  75201-3136.

5.      CenturyLink has repackaged/renamed itself as  Lumen Technologies, since the incidents made the basis of this lawsuit,  and is a Louisiana telecommunications corporation, headquartered in Monroe, Louisiana, whose address is  100 Century Link Blvd, Monroe, Louisiana 71203.  Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas,

6.      DirecTV is a corporation whose principal place of business is located located at 2230 E. Imperial Hwy, El Segundo, California 90245.  It may be served with service or process through its registered agent for service Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company.  The service address for said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7.      AT & T is a corporation whose principal place of business is at 208 S. Akard St., Dallas, Texas .  At the time of the incidents made the basis of this lawsuit, it is

---

[2]  All references to Defendant is to CenturyLink, unless otherwise specified. .  References to the other Defendants will be referenced as Defendant, followed by the name of same.

believed that A T & T and DirecTV merged, thereby making DirecTV either a wholly

owned subsidiary of AT & T or some other entity within or under the umbrella of AT& T.

8.     Credence Management is a corporation or business entity, organized

in Georgia, which acts a collection agent for either A T & T, DirecTV, or both. Its

principal place of businesws is 4222 Trinity Mills Rd., Suite 260 Dallas, Texas 75287,

and service of process may be had on this Defendant at said address. Corporation Service

Company d/b/a CSC Lawyers Incorporating Service Company. The service address for

said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

9.     Sequeim Asset Solutions, LLC is a corporation or business entity,

organized under the laws of Georgia, which acts a debt collector or collection agent for

either A T & T, DirecTV, or both. Its registered agent for service is Chelsey Martine,

acting as vice president for Corporation Service Company d/b/a CSC Lawyers

Incorporating Service Company. The service address for said registered agent is 211 E.

7th Street, Suite 620, Austin, Texas 78701-3218.

10.     The amount in controversy exceeds $1,000,000.00.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1332. This Court has supplemental jurisdiction over

Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

12.     Defendant, CenturyLink, subsequently rebranded or renamed

Lumens Technology is a corporation organized under the laws of the State of Louisiana. Therefore diversity of citizenship exists. Because it was operating as CenturyLink during all the actions referenced herein, the name CenturyLink will be used throughout this petition.

Various companies and/or corporations, have been induced to participate by and have participated with the defendant in the offenses charged in this complaint and have performed acts and made statement in furtherance thereof.

13. Plaintiff secured services from Defendant, CenturyLink. Century Link provided telephone and internet services to Plaintiff at her office in Brazoria County, Texas.

14. Venue is proper in Brazoria County, Texas and therefore the Southern District of Texas, Galveston Division has jurisdiction in this matter. Additionally, this Court has personal jurisdiction over CenturyLink because said Defendant conducts business in this District and has sufficient minimum contacts in this District. CenturyLink intentionally avails itself of this jurisdiction by transacting business and deriving substantial revenues from business activity in this District.

15. Likewise, this Court has personal jurisdiction over DirecTV because it conducts business in this District and has sufficient minimum contacts in this District.

16. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c), as a substantial part of the events or omissions giving rise to this claim or a substantial portion

of the property involved in this case was due to the business transacted in Brazoria

County, Texas by CenturyLink.

## CAUSES OF ACTION

17.     Plaintiffs bring this action pursuant **47 U.S.C. §§ 201, *et seq.* and 47

C.F.R. § 64.2401**; the **Fair Credit Reporting Act codified at 15 U.S.C. § 1681** , the

**Fair and Accurate Credit Transaction Act 15 U.S.C. § 1681** and the **Fair Debt

Collection Practices Act** 15 U.S.C. 1692.  Plaintiffs bring supplemental claims for

breach of contract (express and implied), violations **Texas Business and Commerce

Code** (Texas Deceptive Trade Practices Act, fraud, fraudulent inducement and negligent

misrepresentation.

## FACTUAL BACKGROUND AND CLAIMS

18.     Plaintiff obtained telephone services from Embarq in or around 2004.

In the City of West Columbia, Texas, the telephone service company changed numerous

times, finally becoming CenturyLink in or around  2009.   Plaintiff was a customer of

Embarq at the time of CenturyLink's acquisition. CenturyLink has market presence in 37

states[3]  as indicated d on its website  [4]

---

[3]https://broadbannow.com

[4]https://en.wikipedia.org/wiki/Lumen_Technologies#:~:text=By%20http%3A//www.cent
urylinkqwestmerger.com/centurylink%2Dtemplate/images/network%2Dmap.jpg%2C%20Fair%2
0use%2C%20https%3A//en.wikipedia.org/w/index.php%3Fcurid%3D27066364

National Network Map



19.     CenturyLink's sells a variety of products and services to its customers , including high-speed internet, local and long distance telephone services.  It also sells/sold  television services in West Columbia, Texas at the time of the transactions leading up to a termination of Plaintiff's services.

20.     During the time that Plaintiff had telephone and internet service with Defendant, she found said services to be either problematic or inadequate in the following respects:

a.     CenturyLink overcharged for telephone and internet services;

b.     billing was inconsistent- specifically, when on a price plan which was not to vary, the bill would not remain the same monthly, as it should have.

c.     Each time, a change was made to Plaintiff's  telephone  service, (e.g. adding "At Ease)  Plaintiff lost telephone service usually for one entire day, no

-6-

matter what the nature of the change was;

    d.    Internet service was sketchy and often did not work.

    e.    CenturyLink did not provide services at the internet speed at which it guaranteed the consumer/Plaintiff.

21.    Plaintiff contends that same was  a result of failing to integrate its technology amongst all of the smaller companies that it has purchased.

22.    Plaintiff was also charged irregular billing fees for items that were encompassed  in regular billing.  For example, Plaintiff had unlimited long distance in her package, however, CenturyLink was billing a long distance weekend charge. Further details are outlined infra.

23.    Consequently in or around February, 2019, Plaintiff decided to discontinue her telephone services.  Plaintiff already had unlimited long distance with all the calling features, plus internet.  The monthly billing kept fluctuating which was contrary to the Plaintiff's contracted for pricing plan, which was to be the same each month.

24.    In addition to having billing problems, Plaintiff also had problems with spotty internet service, which often included inability to access the internet discussed further infra.

25.    Plaintiff complained regarding internet problems and not being able to access the internet properly. The technician advised that a new modem was needed and charged a one time fee of $100.00.  However, the new modem did not eradicate the

problem. In addition to poor internet service, Plaintiff also complained about billing issues.

26.    Consequently, in February, 2019, Plaintiff, contacted CenturyLink to discontinue services on the day following the termination of services call. However, the service was discontinued on the same day.  Plaintiff had specifically asked for termination on the following day in order to retrieve and record all messages in her voice mailbox.

27.    Plaintiff again contacted  CenturyLink in order to obtain message retrieval. CenturyLink's Loyalty Department urged Plaintiff to retain her service and made her  an offer to remain with her current plan, coupled with  DirecTV, at a lesser rate than Plaintiff was already paying.  Said rate was to be either $97.00 per month.

28.    Plaintiff would show that she was promised one rate during the sales process, however, she was charged a higher rate when actually billed.  Moreover, she was charged unauthorized fees, including billing for services not ordered.

29.    Additionally, Plaintiff was charged for equipment which was supposed to be movable, a  "mini genie.  However, when attempting to move the genie, Plaintiff learned that same had been hardwired and was incapable of being moved. Plaintiff contends that same constitutes billing for a service that was fake or never delivered and requested that Defendant remove the $99.00 fee billed for same.

30.    Upon initial complaint, the CenturyLink agent failed to remedy the wrong-ful charges and remove the improper charges from the bill.   Plaintiff was instead directed

to contact DirecTV to sort out this billing issue.

31.     With each agent or supervisor that Plaintiff spoke with, said agent or supervisor for CenturyLink had a pervasive and persistent practice of: denying that original prices quoted had ever in fact been quoted, that the prices or services previously offered were impossible to provide, refused to honor price promises, denied that the new modem was unnecessary and should therefore not be returned[5], Moreover, the CenturyLink supervisor and other representatives claimed that the company's computer systems did not show any record of such a call or what Plaintiff had been promised or that notes on the system indicated that a discussion had been had, but not the contents of the discussion.

32.     In speaking with one supervisor, said supervisor assured this Plaintiff that she could not have been offered a bundle price as quoted by Plaintiff because same would been below the amount that each service could be offered alone. Therefore, she intimated that Plaintiff must be lying, as the price quoted was basically a mathematical impossibility. CenturyLink then tried to negate its offer and suggested a different, more expensive offer that it wanted Plaintiff to take.

33.     Plaintiff then sent a letter to CenturyLink outlining the billing problems . Same is attached as Exhibit A, and incorporated by reference, the same as if fully copied

---

[5] Defendant induced Plaintiff to purchase a new modem, attributing internet problems to an old modem. Plaintiff asserted that the new modem had not improved the quality of the internet service.

and set forth herein.

34.    Plaintiff then resorted to contacting someone else in CenturyLink.  Upon complaining, Plaintiff was advised that she had been afforded one credit and would not be afforded another.

35.    Upon failure of that contact to result in changes, Plaintiff sent a letter of complaint to CenturyLink.  After the first responses failed to resolve the problem, the matter was escalated to Chadwick Woods.  Some of the correspondence with Woods is attached herein as Exhibit B, and incorporated by reference, the same as if fully copied and set forth herein.

36.    Mr. Woods removed most of the improper charges and Plaintiff paid the balance thereon.  Plaintiff was allowed all offsets and credits which he deemed proper or that the parties discussed. Plaintiff paid the remaining balance, making the account balance -0.

37.    However, the following month, CenturyLink billed the Plaintiff at a higher rate, rather than the rate quoted.

38.    Plaintiff attempted to contact Woods again.  However, follow-up emails went unanswered.  In October, 2019, Plaintiff again notified Woods by call and email. He failed to respond to calls and emails.  See Exhibit C, attached and incorporated by reference, the same as if fully copied and set forth herein.

39.    Plaintiff refused to pay the billed amount, but rather paid the amount

agreed to upon initiation of services.   In January, 2020, Plaintiff notified CenturyLink to discontinue service.  Plaintiff also sent a certified letter to both CenturyLink and DirecTV.[6] (See Exhibit D , attached and incorporated by reference, the same as if fully copied and set forth herein-).

40.    DirecTV discontinued Plaintiff's service, but sent a separate bill, alleging that services were still being provided.  Plaintiff sought arbitration with DirecTV, pursuant to its protocol.   However, DirecTV did not participate in arbitration but rather agreed to zero out Plaintiff's alleged balance. On June 22, 2020, DirecTV called indicating that it would -0- out Plaintiff's account and not report any negative information to the credit bureau via voicemail.

41.    CenturyLink continued to bill for its services, however.  CenturyLink had discontinued internet service, but would not turn off the phone and continued to bill Plaintiff, even though she has ceased to pay for service and even though Plaintiff has requested that service be discontinued. CenturyLink had left phone messages instructing Plaintiff to pay or services will be discontinued.  However, it failed to do so.

42.     For a time, both CenturyLink and DirecTV were billing for the same service, even though  Plaintiff's service was discontinued in February, 2020.

43.    Plaintiff contends that Defendant refused to discontinue service, as requested for the sole purpose of providing a legal basis for  Defendant to proceed with a

_____

[6]  Only the letter to CenturyLink is attached as an attached Exhibit.

counterclaim or offset against Plaintiff for any recovery in this or any other action she might bring, as Plaintiff had threatened legal action to resolve the issues outlined herein.

44.    Plaintiff is an attorney.   In that capacity, Plaintiff is required to file documents via efiling.

45.    Plaintiff was unable to file the Exhibits to an Opposition to Defendant's Motion for Summary Judgment in one of her cases.  Same was due to faulty internet service. Though the pleading in chief went through, the exhibits did not. Though counsel explained same to the Court, the Court refused to accept  the exhibits which were filed the following day.  Plaintiff contends that failure to timely file the exhibits was due to faulty internet service provided by CenturyLink.

46.    Plaintiff contends that she and both of the other Plaintiffs in this cause were damaged thereby.  In the matter pertaining to Jeff Kitchen, demand for a sum of $1,000,000.00. Plaintiff contends that her client would have received a minimum of $1,000,000.00 for settling the case at the summary judgment phase, if the judge accepted the late filed exhibits.  Had the case made it to the trial phase, Plaintiff contends that Kitchen would have received a sum in excess of $2,000,000.00 at minium.  Moreover, had the Court not  admonished Plaintiff regarding the incredulity of her claims regarding internet service, the outcome of the case would have in all likelihood been rendered in favor of Plaintiff, Kitchen.

47.    Plaintiff contends that a similar incident happened in another case involving

-12-

Plaintiff, Charlie Brown Heritage Foundation, in the same Court. Internet problems resulted in transmission problems which delayed the tender of exhibits by one day, with the court deeming same to be untimely. Said case would have netted Plaintiff at a minimum of least $150,000.00 per defendant (2) for a total of $300,000.00 up to a maximum of $600,000.00.

48.    Due to the cause being dismissed, Plaintiff, Charlie Brown suffered damage to its property, including water damage, glass breakage, vandalism, and other property damage, along with deterioration to its buildings due to failure to obtain settlement proceeds or a jury award which would have resulted in building rehabilitation. Same would have occurred but for the acts of Defendant. Damage occurred to Plaintiff as a result thereof in an amount to be determined by the jury, but which exceeds the sum of $500,000.00.

49.    Plaintiff would show that the actions of CenturyLink impacted her ability to run her business and provide services to her clients. Plaintiff could in all likelihood have suffered more than monetary damages, including but not limited to sanctions or disciplinary action due to inadequate internet service provided by the Defendant, CenturyLink.

Due to the foregoing, coupled with the inability to have adequate telephone, fax, and internet services, Plaintiff was forced to close her practice.

50.    Because CenturyLink has/had a monopoly on telephone services in city

-13-

of Plaintiff's office, during the time of the incidents made the basis of this suit, Plaintiff

was unable to obtain telephone services from any other carrier to maintain her business.

## CLAIMS FOR RELIEF

### VIOLATIONS OF 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401

51.    CenturyLink is a common carrier engaged in interstate communication by

wire for the purpose of furnishing communication services as defined in **47 U.S.C.§**

**201(a)** of the **Federal Communications Act ("Communications Act")**.

52.    Carriers are responsible for the conduct of third parties acting on the

carrier's behalf, *See* **47 U.S.C. § 217** which provides in pertinent part:

> In construing and enforcing the provisions of this chapter, the act, omission, or
> failure of any officer, agent, or other person acting for or employed by any
> common carrier or user, acting within the scope of his employment, shall in every
> case be also deemed to be the act, omission, or failure of such carrier or user as
> well as that of the person.

53.    Section 201(b) of the **Communications Act** prohibits "unjust" and

"unreasonable" practices "in connection with such communication service." At all times

relevant hereto, 47 U.S.C.§ 201(b), provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection
> with such communication service [*i.e.*, interstate or foreign communication by wire
> or radio], shall be just and reasonable, and any such charge, practice,
> classification, or regulation that is unjust or unreasonable is declared to be
> unlawful…

54.    CenturyLink's practice of billing and collecting unauthorized charges

from Plaintiff is neither just nor reasonable and is, in fact, unjust and unreasonable, and

violates 47 U.S.C. § 201 et seq.

55.    At all times relevant hereto, 47 C.F.R. § 64.2401, entitled **"Truth-in-**

**Billing Requirements**," provided, in relevant part, as follows:

> (b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed  correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged…

> (d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill.

56.    The charges contained on CenturyLink's bills to Plaintiff were not

accompanied by "clear, non-misleading, plain language description of the service or

services rendered" nor did they "contain clear and conspicuous disclosure of [ ]

information that the subscriber may need to make inquiries about, or contest, charges on

the bill," in violation of 47 C.F.R. § 64.2401.

57.    Moreover, CenturyLink billed for inappropriate or unjust charges, and

charges exceeding the amount contracted for.  As heretofore stated, CenturyLink also

collected for charges which were contained in other places on the bill or contained in/or

subsumed in another charge, resulting in double or multiple billing for the same item.

58.     CenturyLink is liable to Plaintiff  for damages and attorneys' fees, pursuant

to 47 U.S.C. § 206, which provides as follows:

-15-

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee. . .

59.     Pursuant to 47 U.S.C. § 207 are entitled to recover  compensatory damages restitution, an accounting, and all other relief deemed just and equitable.

### FRAUDULENT INDUCEMENT

60.     Plaintiff entered into a contract to keep her current phone services, coupled with adding DirecTV for a sum of  $97.00 per month.  Said offer induced Plaintiff to rely on that amount.

61.     Defendant fraudulently induced Plaintiff to accept the offer by promising one rate.  Nevertheless, Defendant billed Plaintiff at a rate higher than the one quoted.

62.      Defendant fraudulently and negligently misrepresented the billing plan and structure, and the services which would be included in the package.  Defendant included services, which increased billing costs, though none of these items were mentioned at the time of the offer/sales conversation.  Same constitutes consumer fraud as the Defendant would  receive a higher dollar figure for the provision of services which exceeded the agreed upon amount or terminate Plaintiff's service for nonpayment.

63.     CenturyLink had a pattern and practice of adding and removing services and/or stating that the service was included in another service.  For example, Defendant indicated that "line guard" which protected the consumer for costs associated

with repairs for wire maintenance was contained in its "At Ease" service. However, when repair service was necessitated, CenturyLink indicated that the consumer would be charged because said service was not contained in "At Ease."  At times, Plaintiff was billed for both At Ease and Line Guard.  (See for example Exhibit D, attached and Said position changed based upon which agent the consumer received during a telephone call.

64.    Additionally, Plaintiff was promised certain benefits for accepting a bundle (breach of contract) for less than what she was paying( fraudulent inducement) to prevent her leaving or discontinuing services with CenturyLink.

65.     Defendant failed to include all information regarding pricing and billing in its verbal offer.  Information was omitted from the sales pitch, either because the sales agent wished to present the price as low as possible to land the sale, or because the system itself does not provide all of the needed information, or CenturyLink's agreement with DirecTV failed to provide all the information contained in DirecTV's pricing plan.  An example is set forth below in the following paragraph.

66.    Specifically, Plaintiff in a telephone call of August 19, 2019,was notified of a regional sports fees, and upon learning of same, demanded that same be removed from her bill due to lack of agreement thereto and Plaintiff's disdain for the field of sports.  Plaintiff was told that the fee was not optional, but rather mandatory for having DirecTV, and therefore, the fee would not be removed.  Defendant stated further that the time to contest the fee expired at the time of entering into a contract for services.

According to the information provided, a protection plan was also included which was not ordered by or discussed with the Plaintiff.

## BREACH OF CONTRACT

67.    Defendant, CenturyLink, promoted fixed monthly rates for certain stand - alone  and bundled services, including high-speed internet and local and long distance telephone services. While the Company routinely promoted its simple, low rates to customers, it was fully aware that those low rates would not be delivered.

68.    Same was evidenced by the fluctuation in monthly billing costs.  Plaintiff had contracted with the Defendant for a pricing plan, where the rate was to remain fixed for the life of the contract.

69.    Plaintiff received an offer for services from Defendant, agreed to pay, and did pay Defendant for the provision of services and products at agreed upon costs. In doing so, Plaintiffs entered into a contract with Defendant.

70.    Plaintiff and Defendant modified the original contract or entered into a new contract when services for DirecTv were added and a bundle price was offered to and accepted by Plaintiff.

71.     Defendant expressly and/or impliedly agreed to bill and collect only for authorized charges.

72.     Defendant breached these obligations by billing and collecting more than the amount  agreed upon, billing for unauthorized charges, and by providing bills that

-18-

were unclear and misleading.

73.    Defendant's acts, imposing unauthorized charges on Plaintiff's accounts was intentional and willful.

74.    Defendant routinely overcharged Plaintiff in breach of its offer and contract, implied or express.

75.    Defendant failed to deliver telephone or internet services and related products at the promised price. Plaintiff was charged excessive amounts that she did not agree to pay.

76.    Consequently, Plaintiff was charged improper termination fees for products that were terminated.  Therefore, the  Defendant caused her account to prematurely be sent to collections when Plaintiff refused to pay wrongful fees.

77.    Defendant was not authorized or justified in charging Plaintiff for unauthorized amounts.

78.    Defendant's conduct in breaching the contracts in the above-described manner was not isolated but was rather systematic, pervasive, persistent, and a direct result of business policies and practices implemented to maximize Defendant's revenue.

79.    Plaintiff was injured, harmed, and incurred financial loss by way of Defendant's above-described conduct in amounts to be determined at trial.

80.    Plaintiff was under duress to pay the improper amounts on threat of

having her essential services cancelled and/or interrupted.   Plaintiff' refusal to pay the

unauthorized charges resulted in a dispute, which ultimately led to a termination in

services from the only carrier in the area which could provide telephone service, either

due to noncompete contracts entered into between CenturyLink and other corporations

and/ or because CenturyLink held a  monopoly on the provision of telephone services in

West Columbia, Texas.  This "monopoly" resulted in  the closing of Plaintiff's business.

81.    An implied covenant of good faith and fair dealing is part of all contracts.

Defendant breached its contractual obligation of good faith and fair dealing, implied in all

contracts, by billing and collecting for unauthorized charges.

## BREACH OF FAIR DEBT COLLECTION PRACTICES LAWS

82.    Defendant breached the contract with Plaintiff by refusing to

terminate her telephone services when directed and as directed, thereby causing Plaintiff

to incur additional charges beyond the date that Plaintiff requested that her services

(telephone, internet, and television services) be terminated.   Plaintiff consequently

refused to pay same.

83.    Defendants A T & T, DirecTV, or CenturyLink sent the account to

collections with both Sequiem Asset Solutions (hereinafter referred to as Sequiem) and

Credence Management (hereinafter referred to as Credence), making it appear that the

collection was for two separate accounts, when same was for the same account.

84.     Plaintiff and DirecTV allegedly resolved its dispute, after Plaintiff's

request for arbitration on or about May 29, 2020.  In response thereto, DirecTV left a

voice mail message that the account had been zeroed out.  However,  Plaintiff was

subsequently  contacted by A T & T, stating that there was a $100.00 due and owing to A

T & T.  Plaintiff did not have an account with A T & T.  Current account information

reveals a sum greater than that.

85.    Plaintiff would show that the debt was not owed, that the matter had been

allegedly resolved per DirecTV, and that reporting of same violated the **Fair Debt

Collection Practices Act.**

86.    As a result, Plaintiff's credit score decreased approximately 50 or

more  points.

87.    Prior to Defendant's placing the information on Plaintiff's credit report,

Plaintiff was made an offer for a signature loan from her credit union.   Upon later

attempting to accept the offer, said offer  was withdrawn and the signature loan was

denied due to the information placed on Plaintiff's credit report by Sequeim and/or

Credence on behalf of the other Defendants, as contained in the denial letter.

88.    The inability to obtain a loan at the time sought, was critical as

Plaintiff was in the middle of a remodel and rehab project on her home and another

property.  Renovations had already begun at the time that the loan denial had occurred,

after a previous preapproval.  Same resulted in damage to her rehab project in an amount

in excess of $50,000.00 and to her home in an amount equal to or more than $50,000.00.

-21-

The inability to complete one project led to the inability to sell her home, as planned, which would have netted Plaintiff an amount in or around $250,000.00.

89.    The account(s) were sent to collections by either DirecTV or  A T & T, or CenturyLink, as a result of  the CenturyLink, DirecTV's, and or A T & T's  billing for said account, in contravention of the resolution  agreement with DirecTV.

90.     In addition thereto, both Credence Management and Sequeim reported the accounts as due and owing, therefore reporting two negative credit accounts for the same transaction(s)- the alleged DirecTV balance.

91.    It is a violation of the **Fair Credit Reporting Act**  to report an invalid and an incorrect account.  It is further a violation of the law to indicate that a matter is resolved, with the alleged creditor owing nothing and  yet report same as a delinquent account.  Both acts are violative of 15 U.S.C. § 1681 et seq.  Defendants, Sequiem and Credence did so, in contravention of the information provided by Plaintiff indicating the dispute of the account(s).

92.    Defendant's (CenturyLink, AT & T, and DirecTV)  use of different collection company's  reporting of the same debt as a new and different debt is also violative of the both the **Fair Credit Reporting Act** and the **Fair and Accurate Credit Transaction Act.**  Additionally, calls related thereto from collections for all three entities constituted a violation of the **Fair Debt Collection Practices Act** 15 U.S.C. 1692.

93.    **The Fair Credit Reporting Act**  15 U.S.C. 1681 et seq mandates  fair and

accurate credit reporting.  It also mandates that a report contain information that a

consumer closed an account 15 U.S.C. 1681 § (e) , as well reporting when there is a

dispute of an account by the consumer.  15 U.S.C. 1681 § (f) .

94.  Defendants Sequeim and Credence failed to validate the information provided

by the Plaintiff, failed to remove it from her credit report, and failed to notify her of

Defendant's reporting said  information of a delinquent account on Plaintiff's credit

report  (as the notice was obtained from another source), nor did it investigate the dispute

prior to reporting same in contravention of the statute.

95.  Moreover, after discussion of the account, the Defendant Sequeim or

Credence stated that it was returning the account to DirecTV, only to remove the account

and again place it on Plaintiff's credit report.

96.  Most recently, Defendant, Credence Management has reported the

account as a delinquent account.

## TEXAS DECEPTIVE TRADE PRACTICES ACT

97.  Plaintiff would show that in addition to being  subjected to fraud, fraudulent

inducement, breach of contract, etc., as set out supra, she has also been subjected to the

following  violations of the *Texas Deceptive Trade Practices Act*  as found in the **Texas**

**Business and Commerce Code** §17.46.

The *Texas Deceptive Trade Practices Act* provides in pertinent part:

> Sec. 17.46.  DECEPTIVE TRADE PRACTICES UNLAWFUL.  (a)  False,
> misleading, or deceptive acts or practices in the conduct of any trade or

commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b)  Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(1)  passing off goods or services as those of another;

(2)  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(9)  advertising goods or services with intent not to sell them as advertised;

(11)  making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

(12)  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(14)  misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

(24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

98.    Pursuant to **Texas Business & Commerce Code** §17.50, when a

Defendant takes any of the foregoing actions, or a Plaintiff relies on the Defendants

assertions to his detriment, or the Defendant engages in unconscionable conduct and does

so willingly and knowingly, the Plaintiff is entitled to treble damages.

99.     Defendant has violated the ***Texas Deceptive Trade Practices Act*** ( hereinafter DTPA)  in the following respects:

a.     Specifically, Defendant, CenturyLink advertised telephone services, with intent not to sell them as advertised, as set forth supra.  According to supervisors, the "bundle" price offered (price reduction) could not be provided.  Therefore, the Defendant denied that such an offer was made.  Same is violative of said act with respect to **DTPA** § b (11) of the act.

b.     CenturyLink represented that it had authority to set the price for and the selection of packages and to provide the for DirecTV for its customers, with all authority regarding services issues, billing problems, etc. being handled by CenturyLink in violation of **DTPA** §§ b (1)(2)

c.     In addition thereto, CenturyLink offered bundle pricing, indicating that it had the authority to offer the bundle, including both its services and that of DirecTV in violation of **DTPA** §§ b (1)(2)(12)(14).

d.     As heretofore set out, CenturyLink offered a bundle package and contracted for  the bundle package without the intent to honor the contract pricing agreement as it billed for add on fees (such as a sports fee) and taxes, which it failed to disclose, indicating  after billing (upon Plaintiff's query)  that same was required by DirecTV in violation of the  **DTPA** §§ b (1)(2)(9)(11)(24).

e.     Additionally, a CenturyLink supervisor indicated that the sales person

lacked the authority to sell a bundle package and attempted to renegotiate the package rate at a much higher rate than the amount contracted for in violation  the **DTPA** § b (14).

100.    Because the actions of Defendant, CenturyLink were knowing and unconscionable, the Plaintiffs are entitled to treble damages as provided for by the Texas Deceptive Trade Practices Act as codified in the  **Texas Business & Commerce Code** §17.50.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays for damages as set out below :

1.    Plaintiff, Jeff Kitchen is entitled to a sum to be determined at trial, but which is in excess of $1,000,000.00 for the damages he would in all likelihood have received had his case not been impaired by the actions of Defendant.

2.    Plaintiff, Charlie Brown Heritage Foundation is entitled to a sum to be determined at trial, but which is in excess of $800,000.00 for the damages it would in all likelihood have received had his case not been impaired by the actions of Defendant;

3.    Plaintiff's  loss of attorney's fees as a result of dismissal of the afore-mentioned cases in an amount to be determined at trial, but which exceeds $810,000.00.

4.      Plaintiff's loss of income for not having telephone, internet, and fax services in an amount in excess of $3,000,000.00 from the date of cessation of services through the present;

5.      Damages to her credit rating;

6.      Damage to her reputation for having been insulted by the Court and having same published, as a result of not submitting documentation in a timely fashion due to lack of proper internet services. Said damages are in excess of $5,000,000.00.

7.      Damage to her properties' renovation project and to her home, due to failure to procure loan proceeds or settlement proceeds which would have allowed her projects to continue in an amount to be determined by the jury, but which exceeds $100,000.00.

8.      Any and all sums due for overbilling, but an amount in excess of $1200.00; for costs incurred to date due to improper current billing;

9.      All appellate costs as a result of the dismissal of cases for the Plaintiffs, Jeff Kitchen and the Charlie Brown Heritage Foundation. in the approximate amount of $15,000.00.

10.      All damages resulting from statutory violation of the statutes cited herein;

11.      Mental pain and anguish due to ineffective telephone and internet service and resulting case and client problems in an amount which may not be

easily calculated.

11.    For such other and further relief to which Plaintiffs may be justly entitled.


Respectfully submitted,

/s/ V.L.Davis

Veronica L. Davis
Fed. No. 29717
226 N. Mattson
West Columbia, Texas 77486
(979) 248-4583 (Cell)
vld57atal@yahoo.com

EXHIBIT A

*Veronica L. Davis*
*Attorney at Law*
*226 N. Mattson*
*West Columbia, Texas 77486*
*(979) 345-2953*

Century Link
Corporate Office
Resolutions Department
100 Centurylink Drive
Monroe, Louisiana 71203

July 24, 2019

Re:     Account No. 314000740

Dear Sir or Madam,

Please allow this letter to serve as a formal complaint and attempt to resolve billing issue
regarding the above account. Outlined below are the sequence of events pertaining to this
account since February, 2019.

On initial call with LaShawna she offered either $97.00 or $102.00 per month. Both amounts
are listed on my notes. I called LaShawna to reconnect my telephone service after
disconnecting the day before. She was with the Loyalty Dept. Gave me a DirecTV Acct #
38835222.

On 02.20/19 at 4:40 p.m. Acel from DIRECTV. He verified that I would received a Choice
bundle for $94.99. Internet only would be $49.99 and with home phone and all features $94.99.

On 2/25/19 I spoke with Beau from the Disconnect/Reconnect Department and Orlando. I was
on the phone for 1 hour and 16 minutes. Orlando offered $35.00 for select and $7 each for two
additional genies indicating that my Directv costs would be $49.00 before taxes. We further
discussed removing my fax line (979) 345-5461. I was told that my phone and internet service
together was $101.74 which included $85.00 for service and $9.99 for at Ease.

On February 25, 2019 at 4:02, I began a call with Nikki who referred me to her supervisor. The
supervisor indicated that the person that offered me the bundle did it incorrectly and that could
not be the price. She indicated that my order was pending. She further advised that my
payment history indicated the following:

November     $143.56
December     $159.56

December     $203.10
Jan 4        $104.73
February     $139.13

We discussed that I had Price for Life Promotion at $94.99. She further indicated that my costs under the old plan would have been $143.56.

I advised her that the information that she was giving was contrary to my discussion with Century Link and contrary to the print outs they had sent about my change in service.

She became somewhat insulting telling me that I could not have been offered a Bundle Package for $94.99 because my costs would have been as follows:

        $45.00 for 1 television
        $85.00 month ?

She indicated that those two alone were $130.00.
She also indicated that I had 4 discounts with a $16.00 late fee. She further stated that the total would be $153.99

She indicated that she saw the notes from the girl who set me up. She basically called the girl crazy and intimated that I lacked math skills. In addition to being INSULTED, I was greatly offended by her attitude.

Ashlee was the supervisor. She finally indicated that my fee would be $117.48 total and that was the lowest that she could get it to. I was on the phone 1 hour, 35 minutes and 32 seconds.

I asked for a copy of the telephone call with LaTonya because I know what I was offered. To this date, I have not received that information from Century Link.

03/06/19?
DIRECTV- Saldal 5:44 filed a claim 855-679-HELP   296261948 3835222
Bat entered my home due to installation man leaving back door open. Had to call police to remove the bat.

04/18/19      Discussion with Century Link regarding why I had a $453.00 bill. My installation was to be free. I was told that the break down of the bill was as follows:
$333.48 new service
80.00 past due
80.96 due from 3/27

2000.00 Direct TV
133.448 phone service

-2-

$18.00 late fee

I called DIRECTV and spoke with Mark/Alex indicating that the $99.00 for wireless service needed to be credited back to my account because I did not have wireless service.
When I first spoke with Direct TV, I was told that I would be able to move the Genie from room to room. When the installer was here, he told me that occurs only when you have wireless. He had me sign for wireless service, which he indicated would be an extra $99.00 fee. I signed for the service, but do not have wireless service. However, I did not learn that until I attempted to move a genie to another televison, only to find that didn't work

1.    On May 29, 2019, I again contacted Century Link and spoke with Matthew. He advised that I have an $85.00 bundling package, $6.75 off premises ring and $9.99 at ease. He further advised that all that needed to happen was for DIRECTV to issue me my credit of $200.00 and I would have a credit of $117.00. He indicated that I needed to return to the Loyalty Department which first offered me the bundle, because they can offer things that the regular employees can not offer. He further indicated that he saw that I had spoken with someone there in February, but that the notations of the conversation were not there.

2.    He then indicated that he was transferring me over to DIRECTV and I go Kasayvia. After several questions, I learned that she was not with DIRECTV but Century Link

On 06/07/19, I spoke with a young lady named Daylyn. She reset my passwords so I could look at my bill on line and sent me several confirmations. She indicated that when I spoke with Matthew, my bill was 453.08 and that I paid 353.08. So my balance from that was $100.00 and my next bill was $214.73, therefore I owed $314.73. Breakdown as follows:

        May- June 56.06 Directv; April to May ; Century Link 101.74

She then transferred to the Loyalty Department- Toni- I explained the whole thing about the initial offering, my termination of service, and the offer of Direct bundling to stay

She first stated that  my payment would be $56.00 month from Directv and $85.00 century link which was a lot more than I was told it would be. $141.00. She offered credits and promotions but did not give me the break down of it and said a credit of $152.00 would be issued. Then she said that she did see the two $99.00 charges and took them off leaving me a $45.60 credit. At one point she mentioned a $278.00 credit, (but you she didn't give me that. Nevertheless, I viewed the $45.60 since my bill is $503.00. She indicated that from now on, my bill will be between 117 and 120 with taxes.

On July 12, 2109 upon receiving my bill of $623.07,, I contacted Century Link again. I spoke with someone who I believe was named Josh. His accent was rather heavy. On yesterday, I was told that his name was Diego. He told me that he noted the information from the conversation

with LaTonya and the information I provided was correct. He told me that I owed $70.82. At the time that we were processing the payment, we got disconnected. He did not call me back even though he had asked for my number.

I called back and this time got someone named Fraden at 4:50 p.m. He indicated that no one could handle this manner in the call center and transferred me to Financial Services. After remaining on hold for a lengthy period of time, I called back on my cell phone while still on hold on the my office phone (979) 345-2953.

I finally spoke with someone named Lroenzo at 5:25. He stated that I was incorrectly billed and transferred me to the Loyalty Department. I then spoke with Akesha who began with a progression of payments and balances. She indicated that I was only due a credit of 75.69 according to the notes by LaTonya. I indicated that that was very different than what I had been told. She kept me on hold an inordinate amount of time. I was on hold for 52 minutes and 26 seconds, with a few brief comments from her. I called out to her and told her the connection was failing. The call dropped immediately thereafter. She did not call me back nor provide any information on how she was/had resolved the issue.

I called back again on July 22, 2019 at 6:03 pm. The recording indicated that my call was an after hours call.

Consequently, I called back on July 24, 2019 and spoke with Josh. He indicated that Akesha had written notes that I had not paid my bill and that I was not to receive any further adjustments, along with some other negative comments.

I am incensed by those comments. I find that someone who had no knowledge of the situation would make a comment which would prohibit my ability to eradicate improper billing and to get billing errors corrected. Moreover, she never indicated anything which would indicate that there was any discord or animosity displayed during our conversation. Additionally, I am frustrated that she would attempt to undo what was done by LaTonya. That is premised on Diego's confirmation that the information regarding my call with LaTonya was in the system and that he saw the credit that I referenced of $45.60.

At that point, I asked Josh for information to deal with corporate because I have been wholly unsuccessful in resolving this matter at other levels and with other departments. I have been attempting to do so since the DirecTV was added. I then called corporate and began a conversation with Jessica regarding this matter. However, I got interrupted by an air conditioning service call and was told to call back.

I would further like to point out that none of my bills are consistent with the charges quoted which is why LaTonya made the adjustment in the first place. Additionally, your examination should reveal that the bills are not consistent from month to month.

I find it incredulous that persons not a party to a conversation would indicate that the information which I provided was either inaccurate or a lie. Consequently, **DEMAND IS HEREBY MADE** of copies of the recordings of my initial conversation with LaShawna when I signed up for reconnection of my service and the bundling with DirecTV, as well as the June 07, 2019 conversation with LaTonya. I had previously asked a supervisor for the tape recording In fact, I believe it is the best interest of all parties concerned to provide all discussions regarding this account.

In addition to the foregoing, I have had a long history of spotty/sketchy service with my telephone and internet service. Any time that it rained I had static and/or loss of service for days at a time. [1]  I was advised that it was probably my modem and was encouraged to purchase a new one. However, the problem was that my internet was not running at optimum level. As an attorney, it impacted filings in several of my which resulted in great financial harm to my client and damage to my cases. Texas requires efiling (filing via electronic transmission).

I hereby request an immediate adjustment of my bill to comport with the initial amount quoted for service, copies of the relevant telephone calls as indicated herein, and immediate resolution of this situation. Upon making these adjustments, please change my account information so that same is consistent with the information quoted and then advise me of the amount due and owing. Please also adjust any late fees. I have been trying to rectify this situation. However, my time is valuable and I can not spend inordinate amounts of time on the telephone attempting to get CenturyLink to honor its quotes.

Thank you in advance for your immediate attention to this matter.

Sincerely yours,

Veronica L. Davis

---

[1]  It was this problem that had prompted me to discontinue service in February, 2019 when the bundle was offered.

# EXHIBIT B

Re: CenturyLink Complaint Received [ ref:_00D412HUz0._5001KsmmPN:ref ]

From:  Customer Advocacy (Execs) (ctl.execs@centurylink.com)

To:    vld57atal@yahoo.com

Date:  Wednesday, July 31, 2019, 03:40 PM CDT

Ms. Davis,
The case that I have received is in response to your letter. I received the case and the letter today and will be working to find a resolution as soon as I can. I do have a deadline to have the case resolved within the next 15 business days (on or before 8/20/19). I appreciate all of the details that you have provided and I will be looking at each concern within your letter. While I am working on the investigation, services will remain active. I would also like to speak to you over the phone within the next few days, so that I can touch base with you regarding the process and to ask a few questions. My schedule is 8:00-5:00 M-F est, so if you would like to set up a time that fits your schedule please let me know and I will be happy to accommodate. If you have any other questions please let me know as well.
Thanks,

Chadwick Woods
Case Manager
Customer Advocacy Group
CenturyLink
Voice: (423) 212-4310

-------------- Original Message --------------
From: Ronnie D [vld57atal@yahoo.com]
Sent: 7/31/2019 4:13 PM
To: ctl.execs@centurylink.com
Subject: Re: CenturyLink Complaint Received   []

Chadwick,
Thank you for your response response. Is this a response to my email which was very short and brief or to my detailed letter which I sent via certified mail? If you do not have my letter, I will be happy to attach same and forward it to you. Could you give me an idea as to how long your investigation might take? I assume that I won't have interrupted service during the pendency of this investigation. Please advise

Ms Davis

Sent from Yahoo Mail on Android<https://go.onelink.me/107872968?
pid=InProduct&c=Global_Internal_YGrowth_AndroidEmailSig__AndroidUsers&af_wl=ym&af_sub1=Internal&af_sub2=Global_YGrowth&af_sub3=EmailSignature>

On Wed, Jul 31, 2019 at 1:36 PM, Customer Advocacy (Execs)
<ctl.execs@centurylink.com> wrote:
Hello Veronica,

This email is to advise you that CenturyLink has received your complaint and that I will be responsible for its investigation and resolution. As a member of the Customer Advocacy Group, I will be your advocate in championing your needs as a customer. I will do my absolute best to resolve your complaint as quickly and thoroughly as possible.

I will reach out to you if I have any questions or need any additional information.

Here is your assigned Case #: 02491810

Thank you,

Chadwick Woods
Case Manager
Customer Advocacy Group
CenturyLink
Voice: (423) 212-4310

This communication is the property of CenturyLink and may contain confidential or privileged information. Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the communication and any attachments.

The information in this response, as well as any attachments or Exhibits, contains confidential CenturyLink and customer information, perhaps including Customer Proprietary Network Information (CPNI), and should be treated accordingly with respect to its use and storage.

This communication is the property of CenturyLink and may contain confidential or privileged information. Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the communication and any attachments.
ref:_00D412HUz0._5001KsmmPN:ref

Requested Bill copies [ ref:_00D412HUz0._5001KsmmPN:ref ]

From:  Customer Advocacy (Execs) (ctl.execs@centurylink.com)

To:     vld57atal@yahoo.com

Date:  Monday, August 19, 2019, 02:35 PM CDT

Hello Ms. Davis,
Here are the bills that you requested.


Please let me know if you have any questions.

Thank you,

Chadwick Woods
Case Manager
Customer Advocacy Group
CenturyLink
Voice: (423) 212-4310

This communication is the property of CenturyLink and may contain confidential or privileged information.
Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received this
communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the
communication and any attachments.

The information in this response, as well as any attachments or Exhibits, contains confidential CenturyLink
and customer information, perhaps including Customer Proprietary Network Information (CPNI), and should
be treated accordingly with respect to its use and storage.
ref:_00D412HUz0._5001KsmmPN:ref

 Your_2019-03-04_PaperBill_Electronic_Copy.pdf
45.4kB

 Your_2019-04-04_PaperBill_Electronic_Copy.pdf
44.6kB

 Your_2019-05-04_PaperBill_Electronic_Copy.pdf
44kB

 Your_2019-06-04_PaperBill_Electronic_Copy.pdf
46.7kB

 Your_2019-07-04_PaperBill_Electronic_Copy.pdf
50.2kB

 Your_2019-08-04_PaperBill_Electronic_Copy.pdf
51.7kB

Re: CenturyLink Complaint Received [ ref:_00D412HUz0._5001KsmmPN:ref ]

From:  Ronnie D (vld57atal@yahoo.com)

To:  ctl.execs@centurylink.com

Date:  Tuesday, August 6, 2019, 04:58 PM CDT

Chadwick,

The attached document should certainly clear up  and verify my conversation with
LaTonya.  The document from Century Link, shows changes made to my
account/billing.  Said changes are commensurate with the pricing information which I
was told that I would be charged.  I trust that this will greatly shorten your investigation.

Thank you for calling repair.  However, he has repaired the line going to my office and
not to my home.  Therefore, I am missing all calls.  He indicated that the line outside
was shorted out coming to my house, but he couldn't fix it because I didn't have line
guard.  It was my understanding that "At Ease" covers everything and therefore, the line
guard was dropped.

Also, I did not drop my off premises ring. My phone is to ring in both locations.  I just
dropped the signal ring.

Thanks,

Ms. Davis


On Tuesday, August 6, 2019 10:36:20 AM CDT, Customer Advocacy (Execs)
<ctl.execs@centurylink.com> wrote:

Good morning Ms Davis,
I would like to touch base with you regarding your account and billing. I have made several adjustments
to your account already and I am still looking at several other items. When the new bill posts to the
account, I will see if any other adjustments need to be made on that bill. I am still waiting on the
recordings that you requested so that I can cover those with you as well. The technician that I had to go
out on Friday did repair the line per his report, so I want to make sure that everything is working on your
end, so if you wouldn't mind, could you let me know when the best time for us to cover these items and
more?
I appreciate your time and look forward to hearing back from you so that we can get one step closer to
having your issues resolved.


Please let me know if you have any questions.

Thank you,

Chadwick Woods
Case Manager

Customer Advocacy Group
CenturyLink
Voice: (423) 212-4310

This communication is the property of CenturyLink and may contain confidential or privileged information.
Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received
this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of
the communication and any attachments.

The information in this response, as well as any attachments or Exhibits, contains confidential
CenturyLink and customer information, perhaps including Customer Proprietary Network Information
(CPNI), and should be treated accordingly with respect to its use and storage.
ref:_00D412HUz0._5001KsmmPN:ref

 century link new bill outline002.pdf
1.3MB

EXHIBIT C

Re: CenturyLink Complaint In Progress [ ref:_00D412HUz0._5001KsmmPN:ref ]

From: Ronnie D (vld57atal@yahoo.com)

To: chadwick.woods1@centurylink.com

Date: Tuesday, October 1, 2019, 02:50 PM CDT

Good afternoon Chadwick,
New month.  Same issue.  I haven't been given my bundle price. For September, I was billed $161 plus. I
should have texted you earlier , but I let my frustration  over this repeated billing issue win out. Please
review the situation. You've already listened to the telephone call and know what amount I was promised.
And I am not being provided that price. And I'm not going to accept the higher billing amount.
 Thank you Ms. Davis

Sent from Yahoo Mail on Android

On Tue, Aug 13, 2019 at 3:24 PM, Chadwick Woods
<chadwick.woods1@centurylink.com> wrote:

Hello Ms. Davis,
I know that it has been a few days since the last time that we talked about your billing, but I would
like to set up a time that we can discuss the account and the case further. I have continued to
research your concerns and I am still waiting on several items from other departments. I know that
with the billing being a major concern and making sure that your services remain active, I have
moved that to the forefront of my investigation. If you would please, send me a time that would be
best to talk to you about the billing on your account.

Please let me know if you have any other questions.

Thank you,

Chadwick Woods
Case Manager
Customer Advocacy Group
CenturyLink
Voice: (423) 212-4310

This communication is the property of CenturyLink and may contain confidential or privileged
information. Unauthorized use of this communication is strictly prohibited and may be unlawful. If
you have received this communication in error, please immediately notify the sender by reply e-
mail and destroy all copies of the communication and any attachments.

The information in this response, as well as any attachments or Exhibits, contains confidential
CenturyLink and customer information, perhaps including Customer Proprietary Network
Information (CPNI), and should be treated accordingly with respect to its use and storage.
ref:_00D412HUz0._5001KsmmPN:ref

# EXHIBIT D

*Veronica L. Davis*
*Attorney at Law*
*226 N. Mattson*
*West Columbia, Texas 77486*
*(979) 345-2953*

Century Link
Corporate Office
Resolutions Department
100 Centurylink Drive
Monroe, Louisiana 71203

January 08, 2020

Re:    Account No. 314000740

Dear Sir or Madam,

On or about July 24, 2019, I sent the attached letter of complaint to your office regarding the quote that I received for bundle services. The bundle price offered for my phone service, Internet and Direct TV was either $97.00 or $102.00 per month.

After being billed at a higher rate, I was told by a number of Century Link persons, including a supervisor that the amount quoted was an error. The supervisor then pointed out what the individual costs would have been for internet, telephone and DirecTV. Be advised that I was also told my DirectTV bill for the Select Package would be $49.00 before taxes and $59.00 for choice. (Regular price if not bundled). Nevertheless, the amount which appears on my bill has been around $85.00. However, with the bundle deal, the prices were not calculated individually. Nevertheless, Century Link, since offering the bundle has billed my account without consideration for the bundle offered.

After discussing the matter with numerous persons, I sent a complaint to your office. (See attached Exhibit A). I was then contacted by Chadwick Woods who worked with me for over a month regarding my complaints. He indicated that the person who made the offer was a contract person. Nevertheless, the information was verified. He made the adjustments regarding same.

After speaking with him, he indicated that a Sport fee was added which was not optional, as well as some other fee. I advised him that I do not watch sports at all. He blamed the person offering the bundle for not advising me of that. He also indicated that it was not on the first bill, but rather the second I told him that I did not agree. I also advised that the action was deliberate, in that a consumer pursuant to the Business and Commerce Code may cancel a contract for a certain period of time, without penalty or improper reporting and that the action of Century Link in billing it a month later was a deliberate action to circumvent cancellation.

Nevertheless, he indicated that he would take care of it.

After making the appropriate adjustments and me paying the bill, the following month, I received a high bill, again. I have made several calls to Century Link regarding this matter. I have also attempted to reach Mr. Woods by telephone and email. He has not responded. (See Exhibit B, attached and incorporated by reference. This billing issue still remains and is problematic, in error, and contrary to the amount offered.

An internet search reveals that class action cases are pending regarding this practice- more specifically that Century Link quotes a price, yet bills another.

I hereby request that all charges from my last bill be removed from my bill and that my telephone services be disconnected. If this matter is not immediately resolved, I will either join in the class action suit or initiate a legal action of my own.

Demand is also made for all recordings of my calls with various Century Link personnel to resolve this issue.

Demand is further made that you credit my account for a modem that you had me purchase which was not necessary. I was told that spotty internet service was due to my modem and that I should purchase another. Upon receiving the new modem, I learned that it was a telephone/ wiring problem.

Demand is further made none of this information be reported to any credit bureau, after cancellation or prior due to the fact that all matters related to this account are the result of Century Link's fraudulent practices.

A working telephone and internet is essential to my practice. Living in an area where there is no other service provider has made me put up with years of improper billing and poor service. One such instance resulted in a dismissal of a case which would have netted my company a judgment in excess of $250,000.00. If suit becomes necessary, due to your failure to appropriately make adjustments and close my account, I will seek damages pertaining to every such legal matter as I have kept detailed records in that regard.

Regrettably, it is time to put us both out of our misery and end this poor service.

Thank you for your immediate attention to this matter.

Sincerely yours,

Veronica L. Davis



DER: COMPLETE THIS SECTION

omplete items 1, 2, and 3.
int your name and address on the reverse
that we can return the card to you.
:ach this card to the back of the mailpiece,
on the front if space permits.

Article Addressed to:

Century Link Corporate Office
Resolutions Department
100 Centurylink Drive
Monroe, Louisiana, 71203

9590 9402 2390 6249 1007 01

2. Article Number (Transfer from service label)

7017 1450 0002 0764 0839

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery
1670

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053
Domestic Return Receipt

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

MONROE, LA 71203

Certified Mail Fee $3.50

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted Delivery
☐ Adult Signature Required
☐ Adult Signature Restricted Delivery

Postage $0.70

Total Postage and Fees $7.00

Sent To Century Link
Street and Apt. No., or PO Box No. 100 Century Link Drive
City, State, ZIP+4® Monroe LA 71203

PS Form 3800, April 2015 PSN 7530-02-000-9047
See Reverse for Instructions

7017 1450 0002 0764 0839