# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GAVLESTON

VERONICA L. DAVIS             §
JEFF KITCHEN, AND THE         §
CHARLIE BROWN HERITAGE        §
FOUNDATION                    §
                              §
VS.                           §    NO.  3:22-cv-00038
                              §
LUMENS TECHNOLOGIES, INC      §
CENTURYLINK                   §
DIRECTV AND AT & T            §
CREDENCE MANAGEMENT AND       §
SEQUEIM ASSET SOLUTIONS       §

## PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, VERONICA L. DAVIS, and for cause of actions would show the following:

1.      Plaintiff, Veronica L. Davis[1], is a citizen of Texas, residing in West Columbia, Texas, whose address is 226 N. Mattson, West Columbia, Texas 77486.

2.      Plaintiff, Jeff Kitchen, is a citizen of Florida residing at 67 Fall Drive, Port Orange, Florida 32129.

3.      Plaintiff, Charlie Brown Heritage Foundation is a nonprofit

---

[1]  All references to Plaintiff shall be to Veronica L. Davis.  References to the other Plaintiffs will be designated as Plaintiff, followed by the name of same.

corporation, whose principal place of business is 301 W. Bernard Street, West Columbia, Texas 77486, but whose mailing address is 226 N. Mattson, West Columbia, Texas, 77486.

4.     Defendant, CenturyLink, Inc [2] is a Louisiana telecommunications corporation, headquartered in Monroe, Louisiana, whose address is 100 Century Link  Blvd, Monroe, Louisiana 71203.  Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas,  75201-3136.

5.     CenturyLink has repackaged/renamed itself as  Lumen Technologies, since the incidents made the basis of this lawsuit,  and is a Louisiana telecommunications corporation, headquartered in Monroe, Louisiana, whose address is  100 Century Link Blvd, Monroe, Louisiana 71203.  Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas.

* 5a.   Defendant has notified Plaintiff that both Century Link and Lumen Technologies are parent companies of the company with whom Plaintiff, Veronica Davis contracted and therefore are not the proper parties.

By stipulation of the parties, Plaintiff herein joins the following "corrected parties in the stead of Century Link, being CenturyTel Broadband Services, LLC and Central Telephone Company of Texas.  CenturyTel's registered address is 100 CenturyLink

---

[2]  All references to Defendant is to CenturyLink, CTC, or CBS unless otherwise specified. References to the other Defendants will be referenced as Defendant, followed by the name of same.

Drive, Monroe, Louisiana 71203 and whose registered agent for service is

C.T.Corporation System, whose address is 3867 Plaza Tower Drive, Baton Rouge,

Louisiana 70816.  The firm of Parsons, McEntire, and McCleary PLLC, whose address is

One Riverway, Suite 1800, Houston, Texas 77056 has accepted service and issued a

Waiver of Summons in this cause on behalf of CenturyTel Broadband Services, LLC.

Central Telephone Company of Texas does business as CenturyLink or

CenturyLink is its parent company or was at the time of the incidents made the basis of

this suit.  The firm of Parsons, McEntire, and McCleary PLLC, whose address is One

Riverway, Suite 1800, Houston, Texas 77056 has accepted service and issued a Waiver of

Summons in this cause on behalf of CenturyTel Broadband Services, LLC.

6.    DirecTV is a corporation whose principal place of business is located

located at 2230 E. Imperial Hwy, El Segundo, California 90245.  It may be served with

service or process through its registered agent for service Corporation Service Company

d/b/a CSC Lawyers Incorporating Service Company.  The service address for said

registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6a.    The Corporate Disclosure Statement of DirecTV indicates that DirecTV,

LLC is a wholly owned subsidiary of DirecTV Holdings LLC.  Plaintiff is unable to

ascertain from the Corporate Disclosure Statement whether the right party has been sued.

However, Kilpatrick, Townsend, and Stockton, LLP, 2001 Ross Avenue, Suite 4400,

Dallas, Texas 75210 has responded on behalf of both DirecTV and A T & T.

Plaintiff herein amends its Petition to include as parties DirecTV Holdings, LLC

7.      AT & T is a corporation whose principal place of business is at 208 S.
Akard St., Dallas, Texas .  At the time of the incidents made the basis of this lawsuit, it is
believed that A T & T and  DirecTV merged, thereby making DirecTV either a wholly
owned subsidiary of AT & T or some other entity within or under the umbrella of AT& T.

The Corporate Statement indicates that A T & T Corp or A T & T Inc. Is the
correct party and that A T & T Corp is a wholly owned subsidiary of A T & T, Inc., a
Deleware Corp.  Kilpatrick, Townsend, and Stockton, LLP, 2001 Ross Avenue, Suite
4400, Dallas, Texas 75210 has responded on behalf of both DirecTV and A T & T.

8.      Credence Management is a corporation or business entity, organized
in Georgia,  which acts a collection agent for either A T & T, DirecTV, or both.  Its
principal place of businesws is 4222 Trinity Mills Rd., Suite 260 Dallas, Texas 75287,
and service of process may be had on this Defendant at said address.  Corporation Service
Company d/b/a CSC Lawyers Incorporating Service Company.  The service address for
said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

9.      Sequeim Asset Solutions, LLC is a corporation or business entity,
organized under the laws of Georgia,  which acts a debt collector or collection agent for
either A T & T, DirecTV, or both.  Its registered agent for service is Chelsey Martine,
acting as vice president for Corporation Service Company d/b/a CSC Lawyers
Incorporating Service Company.  The service address for said registered agent is 211 E.

-4-

7th Street, Suite 620, Austin, Texas 78701-3218.

10.    The amount in controversy exceeds $1,000,000.00.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1332. This Court has supplemental jurisdiction over

Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

12.    Defendant, CenturyLink, subsequently rebranded or renamed

Lumens Technology is a corporation organized under the laws of the State of Louisiana.

Therefore diversity of citizenship exists.  Because it was operating as CenturyLink during

all the actions referenced herein, the name CenturyLink will be used throughout this

petition.  Where an action complained of is the result of the local company servicing

Texas, same shall be noted by Central Telephone Company of Texas, hereinafter referred

to as CTC or CenturyTel Broadband Services, LLC, hereinafter referred to as CBS.

Various companies and/or corporations, have been induced to participate by and

have participated with the defendant in the offenses charged in this complaint and have

performed acts and made statement in furtherance thereof.

13.    Plaintiff secured services from  Defendants, Central Telephone Company of

Texas and/or CenturyTel Broadband Services, LLC provided telephone and internet

services to Plaintiff at her office in Brazoria County, Texas.

14.    Venue is proper in Brazoria County, Texas and therefore the Southern

District of Texas, Galveston Division has jurisdiction in this matter. Additionally, this Court has personal jurisdiction over Central Telephone Company of Texas or CenturyTel Broadband Services, LLCbecause said Defendant conducts business in this District and has sufficient minimum contacts in this District. Central Telephone Company of Texas or CenturyTel Broadband Services, LLCintentionally avails itself of this jurisdiction by transacting business and deriving substantial revenues from business activity in this District.

15.    Likewise, this Court has personal jurisdiction over DirecTV because it conducts business in this District and has sufficient minimum contacts in this District.

16.    Therefore, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c), as a substantial part of the events or omissions giving rise to this claim or a substantial portion of the property involved in this case was due to the business transacted in Brazoria County, Texas by CenturyLink.

## CAUSES OF ACTION

17.    Plaintiffs bring this action pursuant **47 U.S.C. §§ 201,** *et seq.* **and 47 C.F.R. § 64.2401**; the **Fair Credit Reporting Act codified at 15 U.S.C. § 1681** , the **Fair and Accurate Credit Transaction Act 15 U.S.C. § 1681** and the **Fair Debt Collection Practices Act** 15 U.S.C. 1692.  Plaintiffs bring supplemental claims for breach of contract (express and implied), violations **Texas Business and Commerce Code** (Texas Deceptive Trade Practices Act, fraud, fraudulent inducement and negligent

[3]https://broadbannow.com

[4]https://en.wikipedia.org/wiki/Lumen_Technologies#:~:text=By%20http%3A//www.cent urylinkqwestmerger.com/centurylink%2Dtemplate/images/network%2Dmap.jpg%2C%20Fair%2 0use%2C%20https%3A//en.wikipedia.org/w/index.php%3Fcurid%3D27066364

19.    Central Telephone Company of Texas and CenturyTel Broadband Services, LLC,, sells a variety of products and services to its customers , including high-speed internet, local and long distance telephone services.  It also sells/sold  television services in West Columbia, Texas at the time of the transactions leading up to a termination of Plaintiff's services.

20.    During the time that Plaintiff had telephone and internet service with Defendant, she found said services to be either problematic or inadequate in the following respects:

    a.    CTC or CenturyLink overcharged for telephone and internet services;

    b.    Billing was inconsistent- specifically, when on a price plan which was not to vary, the bill would not remain the same monthly, as it should have.

    c.    Each time, a change was made to Plaintiff's  telephone  service, (e.g. adding "At Ease)  Plaintiff lost telephone service usually for one entire day, no matter what the nature of the change was;

    d.    Internet service was sketchy and often did not work.

    e.    CBS and/or CTC did not provide services at the internet speed at which it guaranteed the consumer/Plaintiff.

21.    Plaintiff contends that same was  a result of failing to integrate its technology amongst all of the smaller companies that it (CBS, CTC, or CenturyLink) had s purchased.

22.    Plaintiff was also charged irregular billing fees for items that were encompassed in regular billing.  For example, Plaintiff had unlimited long distance in her package, however, CTC was billing a long distance weekend charge. Further details are outlined infra.

23.    Consequently in or around February, 2019, Plaintiff decided to discontinue her telephone services.  Plaintiff already had unlimited long distance with all the calling features, plus internet.  The monthly billing kept fluctuating which was contrary to the Plaintiff's contracted for pricing plan, which was to be the same each month.

24.    In addition to having billing problems, Plaintiff also had problems with spotty internet service, which often included inability to access the internet discussed further infra, which is most likely the result of poor services provided by CBS.

25.    Plaintiff complained regarding internet problems and not being able to access the internet properly. The technician advised that a new modem was needed and charged a one time fee of $100.00.  However, the new modem did not eradicate the problem. In addition to poor internet service, Plaintiff also complained about billing issues.

26.    Consequently, in February, 2019, Plaintiff, contacted CenturyLink (as stated by the name used by personnel answering the telephone)  or CTC to discontinue services on the day following the termination of services call. However, the service was discontinued on the same day.  Plaintiff had specifically asked for termination on the

following day in order to retrieve and record all messages in her voice mailbox.

27.    Plaintiff again contacted  CenturyLink or CTC in order to obtain message retrieval.   Its Loyalty Department urged Plaintiff to retain her service and made her  an offer to remain with her current plan, coupled with  DirecTV, at a lesser rate than Plaintiff was already paying.  Said rate was to be either $97.00 per month.

28.    Plaintiff would show that she was promised one rate during the sales process, however, she was charged a higher rate when actually billed.  Moreover, she was charged unauthorized fees, including billing for services not ordered.

29.    Additionally, Plaintiff was charged for equipment which was supposed to be movable, a  "mini genie.  However, when attempting to move the genie, Plaintiff learned that same had been hardwired and was incapable of being moved. Plaintiff contends that same constitutes billing for a service that was fake or never delivered and requested that Defendant remove the $99.00 fee billed for same.

30.    Upon initial complaint, the CTC or CenturyLink agent failed to remedy the wrongful charges and remove the improper charges from the bill.   Plaintiff was instead directed to contact DirecTV to sort out this billing issue.

31.    With each agent or supervisor that Plaintiff spoke with, said agent or supervisor for CenturyLink or its subsidiary, CTC  had a pervasive and persistent practice of: denying that original prices quoted had ever in fact been quoted, that the prices  or services previously offered were impossible to provide, refused to honor price

-10-

promises, denied that the new modem was unnecessary and should therefore not be

returned[5], Moreover, the CenturyLink supervisor and other representatives claimed that

the company's computer systems did not show any record of such a call or  what Plaintiff

had been promised or that notes on the system indicated that a discussion had been had,

but not the contents of the discussion.

32.    In speaking with one supervisor, said supervisor assured this Plaintiff that

she could not have been offered a bundle price as quoted by Plaintiff because same would

been below the amount that each service could be offered alone.  Therefore, she intimated

that Plaintiff must be lying, as the price quoted was basically a mathematical

impossibility.  CenturyLink or CTC then tried to negate its offer and suggested a

different, more expensive offer that it wanted Plaintiff to take.

33.    Plaintiff then sent a letter to CenturyLink outlining the  billing problems .

Same is attached as Exhibit A, and incorporated by reference, the same as if fully copied

and set forth herein.

34.    Plaintiff then resorted to contacting someone else in CenturyLink.  Upon

complaining, Plaintiff was advised that she had been afforded one credit and would not be

afforded another.

35.    Upon failure of that contact to result in changes, Plaintiff sent a letter of

---

[5]  Defendant induced Plaintiff to purchase a new modem, attributing internet problems to an old modem. Plaintiff asserted that the new modem had not improved the quality of the internet service.

complaint to CenturyLink Headquarters in Monroe, Louisiana.  After the first responses failed to resolve the problem, the matter was escalated to Chadwick Woods.  Some of the correspondence with Woods is attached herein as Exhibit B, and incorporated by reference, the same as if fully copied and set forth herein.

36.   Mr. Woods removed most of the improper charges and Plaintiff paid the balance thereon.  Plaintiff was allowed all offsets and credits which he deemed proper or that the parties discussed. Plaintiff paid the remaining balance, making the account balance -0-.

37.   However, the following month, CenturyLink billed the Plaintiff at a higher rate, rather than the rate quoted.

38.   Plaintiff attempted to contact Woods again.  However, follow-up emails went unanswered.  In October, 2019, Plaintiff again notified Woods by call and email. He failed to respond to calls and emails.  See Exhibit C, attached and incorporated by reference, the same as if fully copied and set forth herein.

39.   Plaintiff refused to pay the billed amount, but rather paid the amount agreed to upon initiation of services.   In January, 2020, Plaintiff notified CenturyLink to discontinue service.  In addition thereto, Plaintiff also sent a certified letter to both CenturyLink and DirecTV.[6] (See Exhibit D , attached and incorporated by reference, the same as if fully copied and set forth herein-).

---

[6]  Only the letter to CenturyLink is attached as an attached Exhibit.

40.    DirecTV discontinued Plaintiff's service, but sent a separate bill, alleging that services were still being provided.  Plaintiff sought arbitration with DirecTV, pursuant to its protocol.  However, DirecTV did not participate in arbitration but rather agreed to zero out Plaintiff's alleged balance. On June 22, 2020, DirecTV called indicating that it would -0- out Plaintiff's account and not report any negative information to the credit bureau via voicemail.

*In spite of said attestations, DirecTV or A T & T, after discontinuing service turned the account over the Credence Management and Sequiem Assets Solutions for collection, at different time Same was noted on Plaintiff's credit report.

In inquiring regarding the nature of the charge or negative report of Plaintiff's credit report, Plaintiff sought to find out the nature of the charge, as she did not have an account with A T & T, nor did A T & T service the area in which Plaintiff resided.  The causes of action associated with the actions of A T & T and DirectTV are further set forth in Paragraph 85 in violation of 15 U.S.C. §1681 s-2.

41.    In spite of Plaintiff terminating her account, CenturyLink or CTC continued to bill for its services, however.  CenturyLink had  discontinued internet service, but would not turn off the phone and continued to bill Plaintiff, even though she has ceased to pay for service and even though Plaintiff has requested that service be discontinued. CenturyLink had left phone messages instructing Plaintiff to pay or services will be discontinued.  However, it failed to do so.

42.    For a time, both CenturyLink and DirecTV were billing for the same service, even though  Plaintiff's service was discontinued in February, 2020.

43.    Plaintiff contends that Defendant, CTC, refused to discontinue service, as requested for the sole purpose of providing a legal basis for  Defendant to proceed with a counterclaim or offset against Plaintiff for any recovery in this or any other action she might bring, as Plaintiff had threatened legal action to resolve the issues outlined herein.

**Efiling Issues and Impact on Cases**

44.    Plaintiff is an attorney.   In that capacity, Plaintiff is required to file documents via efiling.

45.    Plaintiff was unable to file the Exhibits to an Opposition to Defendant's Motion for Summary Judgment in one of her cases.  Same was due to faulty internet service. Though the pleading in chief went through, the exhibits did not. Though counsel explained same to the Court, the Court refused to accept  the exhibits which were filed the following day.  Plaintiff contends that failure to timely file the exhibits was due to faulty internet service provided by Centurylink or CBS..

46.    Plaintiff contends that she and both of the other Plaintiffs in this cause were damaged thereby.  In the matter pertaining to Jeff Kitchen, demand for a sum of $1,000,000.00. Plaintiff contends that her client would have received a minimum of $1,000,000.00 for settling the case at the summary judgment phase, if the judge accepted the late filed exhibits.  Had the case made it to the trial phase, Plaintiff contends that

Kitchen would have received a sum in excess of $2,000,000.00 at minium.  Moreover,

had the Court not  admonished Plaintiff regarding the incredulity of her claims regarding

internet service, the outcome of the case would have in all likelihood been rendered in

favor of Plaintiff, Kitchen.

47.    Plaintiff contends that a similar incident happened in another case involving

Plaintiff, Charlie Brown Heritage Foundation,  in the same Court.  Internet problems

resulted in transmission problems which delayed the tender of exhibits by one day, with

the court deeming same to be untimely.   Said case would have netted Plaintiff at a

minimum of least $150,000.00 per defendant (2)  for a total of $300,000.00 up to a

maximum of $600,000.00.

48.    Due to the cause being dismissed, Plaintiff, Charlie Brown suffered damage

to its property, including water damage, glass breakage, vandalism, and other property

damage, along with deterioration to its buildings due to failure to obtain settlement

proceeds or a jury award which would have resulted in building rehabilitation. Same

would have occurred but for the acts of Defendant.  Damage occurred to Plaintiff as a

result thereof in an amount to be determined by the jury, but which exceeds the sum of

$500,000.00.

49.    Plaintiff would show that the actions of CenturyLink impacted her

ability to run her business and provide services to her clients. Plaintiff could in all

likelihood have suffered more than monetary damages, including but not limited to

sanctions or disciplinary action due to inadequate internet service provided by the Defendant, CenturyLink.

Due to the foregoing, coupled with the inability to have adequate telephone, fax, and internet services, Plaintiff was forced to close her practice.

50.    Because CenturyLink and/or CTC and CBHS has/had a monopoly on telephone services in city of Plaintiff's office, during the time of the incidents made the basis of this suit, Plaintiff was unable to obtain telephone services from any other carrier to maintain her business.

## CLAIMS FOR RELIEF

### VIOLATIONS OF 47 U.S.C. §§ 201, *et seq.* and 47 C.F.R. § 64.2401

51.    CTC and CBS are common carriers engaged in interstate communication by wire for the purpose of furnishing communication services as defined in **47 U.S.C.§ 201(a)** of the **Federal Communications Act ("Communications Act")**.

52.    Carriers are responsible for the conduct of third parties acting on the carrier's behalf, *See* **47 U.S.C. § 217** which provides in pertinent part:

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

53.    Section 201(b) of the **Communications Act** prohibits "unjust" and "unreasonable" practices "in connection with such communication service." At all times

relevant hereto, 47 U.S.C.§ 201(b), provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful…

54.    Plaintiff was denied the ability to use communications services due to the actions of the Defendant, CTC and CBS.

55.    Additionally, CTC's s practice of billing and collecting unauthorized charges from Plaintiff is neither just nor reasonable and is, in fact, unjust and unreasonable, and violates 47 U.S.C. § 201 et seq. *Likewise, said services provided by DirecTV fall within the scope of this provision.  Therefore, any charges from DirecTV submitted to CTC or CBS for billing and collection by CTC were neither just, reasonable, or in an amount contracted for.

56.    At all times relevant hereto, 47 C.F.R. § 64.2401, entitled **"Truth-in-Billing Requirements**," provided, in relevant part, as follows:

> (b) Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed  correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged…

> (d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must contain clear and conspicuous disclosure of any information that the subscriber may need to make inquiries about, or contest, charges on the bill.

-17-

57.    The charges contained on CenturyLink or CTC's bills to Plaintiff were not accompanied by "clear, non-misleading, plain language description of the service or services rendered" nor did they "contain clear and conspicuous disclosure of [ ] information that the subscriber may need to make inquiries about, or contest, charges on the bill," in violation of 47 C.F.R. § 64.2401.

58.    Moreover, CenturyLink billed for inappropriate or unjust charges, and charges exceeding the amount contracted for.  As heretofore stated, CenturyLink also collected for charges which were contained in other places on the bill or contained in/or subsumed in another charge, resulting in double or multiple billing for the same item.

Specifically, DirecTV billed for a sport fee not contracted for or authorized by Plaintiff.  Moreover, its fee included taxes, which was not disclosed during the sales pitch by CTC or CenturyLink.  Plaintiff concludes that an agency relationship existed between DirecTV and CenturyLink or CTC, in which CTC sold packages for DirecTV to its customers.

59.    An agency relationship existed between CTC and DirecTV for the provision of television satellite services. DirecTV was the principal  and CTC the agent, with regard to providing billing services for television packages and the selling of television packages.

In order to show an agency relationship, Plaintiff need only show the elements of an agency relationship--that is that there is a consensual relation whereby one

party is to act for and on behalf of the other.

60.    CTC and DirecTV are liable to Plaintiff  for damages and attorneys' fees, pursuant to 47 U.S.C. § 206, which provides as follows:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee. . .

61.    Pursuant to 47 U.S.C. § 207 are entitled to recover  compensatory damages restitution, an accounting, and all other relief deemed just and equitable.

## FRAUDULENT INDUCEMENT

62.    Plaintiff entered into a contract with CTC, acting as CenturyLink to keep her current phone services, coupled with adding DirecTV services  for a sum of  $97.00 per month.  Said offer induced Plaintiff to rely on that amount.

63.     Said Defendant fraudulently induced Plaintiff to accept the offer by promising one rate.  Nevertheless, Defendant billed Plaintiff at a rate higher than the one quoted, including those charges from or on behalf of DirecTV.  Acting on behalf of DirecTV, both Defendants induced Plaintiff to accept a bundle package to include television services.

64.    Said  Defendant fraudulently and negligently misrepresented the billing plan and structure, and the services which would be included in the package.  Defendant included services, which increased billing costs, though none of these items were

mentioned at the time of the offer/sales conversation, including additional charges submitted and charged on behalf of DirecTV.  Same constitutes consumer fraud as the Defendant would  receive a higher dollar figure for the provision of services which exceeded the agreed upon amount or terminate Plaintiff's service for nonpayment.

65.    CenturyLink had a pattern and practice of adding and removing services and/or stating that the service was included in another service.  For example, Defendant indicated that "line guard" which protected the consumer for costs associated with repairs for wire maintenance was contained in its "At Ease" service. However, when repair service was necessitated, CenturyLink indicated that the consumer would be charged because said service was not contained in "At Ease."  At times, Plaintiff was billed for both At Ease and Line Guard.  (See for example Exhibit D, attached and Said position changed based upon which agent the consumer received during a telephone call.

66.    Additionally, Plaintiff was promised certain benefits for accepting a bundle (breach of contract) for less than what she was paying( fraudulent inducement) to prevent her leaving or discontinuing services with CTC or CenturyLink.  Both CTC and DirecTV are liable and responsible for Plaintiff accepting the bundle package.

67.     Defendant failed to include all information regarding pricing and billing in its verbal offer.  Information was omitted from the sales pitch, either because the sales agent wished to present the price as low as possible to land the sale, or because the system itself does not provide all of the needed information, or CenturyLink's agreement with

DirecTV failed to provide all the information contained in DirecTV's pricing plan. An example is set forth below in the following paragraph.

68.    Specifically, Plaintiff in a telephone call of August 19, 2019,was notified of a regional sports fees, and upon learning of same, demanded that same be removed from her bill due to lack of agreement thereto and Plaintiff's disdain for the field of sports.   Plaintiff was told that the fee was not optional, but rather mandatory for having DirecTV, and therefore, the fee would not be removed.  Defendant stated further that the time to contest the fee expired at the time of entering into a contract for services. According to the information provided, a protection plan was also included which was not ordered by or discussed with the Plaintiff for DirecTV services.  Same constitutes a breach of contract.

## BREACH OF CONTRACT

69.    Defendant, CenturyLink, promoted fixed monthly rates for certain stand - alone  and bundled services, including high-speed internet and local and long distance telephone services. While the Company routinely promoted its simple, low rates to customers, it was fully aware that those low rates would not be delivered.

70.    Same was evidenced by the fluctuation in monthly billing costs.  Plaintiff had contracted with the Defendant for a pricing plan, where the rate was to remain fixed for the life of the contract.

71.    Plaintiff received an offer for services from Defendant, agreed to

pay, and did pay Defendant for the provision of services and products at agreed upon costs. In doing so, Plaintiffs entered into a contract with Defendant.

72.     Plaintiff and Defendant modified the original contract or entered into a new contract when services for DirecTv was added and a bundle price was offered to and accepted by Plaintiff.

73.      Defendant, Central Telephone Company expressly and/or impliedly agreed to bill and collect only for authorized charges, either for itself of DirecTV, due to its agency relationship.

74.      Defendant, CTC, breached these obligations by billing and collecting more than the amount  agreed upon, billing for unauthorized charges, and by providing bills that were unclear and misleading.

75.     Defendant's (CTC and DirectV's) acts, imposing unauthorized charges on Plaintiff's accounts was intentional and willful.

76.      Defendant (CTC) routinely overcharged Plaintiff in breach of its offer and contract, implied or express.

77.     Defendant (CTC)  failed to deliver telephone or internet services and related products at the promised price. Plaintiff was charged excessive amounts that she did not agree to pay.

78.     Consequently, Plaintiff was charged improper termination fees for products that were terminated, for both CTC and DirecTV.  Therefore, the  Defendant

caused her account to prematurely be sent to collections when Plaintiff refused to pay wrongful fees.

79.     Defendant was not authorized or justified in charging Plaintiff for unauthorized amounts.

80.     Defendant's conduct in breaching the contracts in the above-described manner was not isolated but was rather systematic, pervasive, persistent, and a direct result of business policies and practices implemented to maximize Defendant's revenue.

81.      Plaintiff was injured, harmed, and incurred financial loss by way of Defendant's above-described conduct in amounts to be determined at trial.

82.     Plaintiff was under duress to pay the improper amounts on threat of having her essential services cancelled and/or interrupted.   Plaintiff' refusal to pay the unauthorized charges resulted in a dispute, which ultimately led to a termination in services from the only carrier in the area which could provide telephone service, either due to noncompete contracts entered into between CenturyLink and other corporations and/ or because CenturyLink held a  monopoly on the provision of telephone services in West Columbia, Texas.  This "monopoly" resulted in  the closing of Plaintiff's business.

83.     An implied covenant of good faith and fair dealing is part of all contracts. Defendant breached its contractual obligation of good faith and fair dealing, implied in all contracts, by billing and collecting for unauthorized charges.

## BREACH OF FAIR DEBT COLLECTION PRACTICES LAWS

84.     Defendant breached the contract with Plaintiff by refusing to terminate her telephone services when directed and as directed, thereby causing Plaintiff to incur additional charges beyond the date that Plaintiff requested that her services (telephone, internet, and television services) be terminated.   Plaintiff consequently refused to pay same.

85.     Defendants A T & T, DirecTV, or CTC or CBS sent the account to collections with both Sequiem Asset Solutions (hereinafter referred to as Sequiem) and Credence Management (hereinafter referred to as Credence), making it appear that the collection was for two separate accounts, when same was for the same account.

86.      Plaintiff and DirecTV allegedly resolved its dispute, after Plaintiff's request for arbitration on or about May 29, 2020.  In response thereto, DirecTV left a voice mail message that the account had been zeroed out.  However,  Plaintiff was subsequently  contacted by A T & T, stating that there was a $100.00 due and owing to A T & T.  Plaintiff did not have an account with A T & T.  Current account information reveals a sum greater than that.     *The failure to honor the agreement to -0- out the account in lieu of arbitration, constitutes a breach of contract and a breach of implied contract in that:

87.     Plaintiff would show that the debt was not owed, that the matter had been  allegedly resolved per DirecTV, and that reporting of same violated the **Fair Debt**

-24-

**Collection Practices Act.**

88.     As a result, Plaintiff's credit score decreased approximately 50 or more points.

89.     Prior to Defendant's placing the information on Plaintiff's credit report, Plaintiff was made an offer for a signature loan from her credit union.   Upon later attempting to accept the offer, said offer  was withdrawn and the signature loan was denied due to the information placed on Plaintiff's credit report by Sequeim and/or Credence on behalf of the other Defendants, as contained in the denial letter.

90.     The inability to obtain a loan at the time sought, was critical as Plaintiff was in the middle of a remodel and rehab project on her home and another property.  Renovations had already begun at the time that the loan denial had occurred, after a previous preapproval.  Same resulted in damage to her rehab project in an amount in excess of $50,000.00 and to her home in an amount equal to or more than $50,000.00. The inability to complete one project led to the inability to sell her home, as planned, which would have netted Plaintiff an amount in or around $250,000.00.

91.     The account(s) were sent to collections by either DirecTV or  A T & T, or CTC or CBS, as a result of  the CTC or CBS, DirecTV's, and or A T & T's  billing for said account, in contravention of the resolution  agreement with DirecTV.

92.      In addition thereto, both Credence Management and Sequeim reported the accounts as due and owing, therefore reporting two negative credit accounts for the same

transaction(s)- the alleged DirecTV balance.

93.     It is a violation of the **Fair Credit Reporting Act**  to report an invalid and an incorrect account.  It is further a violation of the law to indicate that a matter is resolved, with the alleged creditor owing nothing and  yet report same as a delinquent account.  Both acts are violative of 15 U.S.C. § 1681 et seq.  Defendants, Sequiem and Credence did so, in contravention of the information provided by Plaintiff indicating the dispute of the account(s).

The information obtained to report the invalid account came from the creditor, DirecTV or its parent company AT & T or TPG VIII Merlin Investment Holdings, L.P. When information is obtained from the creditor for reporting to a CRA (Consumer Reporting Agency), the information must be accurate and complete. 15 U.S.C. § 1681s-2(a)(2).  Moreover, Defendant DirecTV and A T & T was required by statute to report a dispute of the account, as well as the fact that the account was closed but failed to do so in contravention of  15 U.S.C. § 1681s-2(a)(3),(4).

94.     Moreover, Plaintiff never had a contract or did business with A T & T. Therefore, A T & T improperly reported a debt to it, when no debt was owed to it and there was no privity of contract between Plaintiff and A T & T.

Plaintiff would show that A T & T, therefore:

a.     provided inaccurate information credit information to its collection agent and subsequently to a CRA;

-26-

b.      Plaintiff notified CRA, Credence Resource Management, Sequeim and AT & T that the information reported by the alleged creditor, Defendants A T & T and DirecTV was false.

c.      the CRA reported the information to the creditor of said dispute;

d.      after receipt of the information, the creditor failed to conduct a reasonable investigation and provide notice to the CRA to correct the reporting error.

Plaintiff further alleges that an agency relationship existed between the Defendants A T & T and DirecTV (as principal) with Sequeim and Credence Resource Management. Said relationship involved collecting debts allegedly owed to A T & T and DirecTV by Sequeim and Credence and further reporting that information to credit reporting agencies.

95.      Defendants failure to accurately report, investigate, and remove the information resulted in a decrease in Plaintiff's credit score, the denial of a loan, and resulting damage to her home and other building projects, resulting in a loss in excess of $50,000.00 (loan amount) coupled with inability to move and sell property, resulting in an aggregate loss in excess of $300,000.00.

96.      Defendant's (CTC or CBS, AT & T, and DirecTV)  use of different collection company's  reporting of the same debt as a new and different debt is also violative of the both the **Fair Credit Reporting Act** and the **Fair and Accurate Credit Transaction Act.**  Additionally, calls related thereto from collections for all three entities constituted a violation of the **Fair Debt Collection Practices Act** 15 U.S.C. 1692.

97.    **The Fair Credit Reporting Act**  15 U.S.C. 1681 et seq mandates  fair and accurate credit reporting.  It also mandates that a report contain information that a consumer closed an account 15 U.S.C. 1681 § (e) , as well reporting when there is a dispute of an account by the consumer.  15 U.S.C. 1681 § (f) .

98.  Defendants Sequeim and Credence failed to validate the information provided by the Plaintiff, failed to remove it from her credit report, and failed to notify her of Defendant's reporting said  information of a delinquent account on Plaintiff's credit report  (as the notice was obtained from another source), nor did it investigate the dispute prior to reporting same in contravention of the statute.

99.    Moreover, after discussion of the account, the Defendant Sequeim or Credence stated that it was returning the account to DirecTV, only to remove the account and again place it on Plaintiff's credit report.  Notice was provided to Plaintiff that Sequeim returned the account to DirecTV, nevertheless, DirecTV or AT & T placed the account for collections on Plaintiff's credit report a second time, with knowledge of the falsity of the information and/or the dispute regarding same.

Defendants DirecTV and A T & T are therefore culpable for any improper reporting, as said entities provided their collection agencies with said information.

100.    Most recently, Defendant, Credence Management has reported the account as a delinquent account.

## TEXAS DECEPTIVE TRADE PRACTICES ACT

-28-

101.    Plaintiff would show that in addition to being subjected to fraud, fraudulent inducement, breach of contract, etc., as set out supra, she has also been subjected to the following violations of the *Texas Deceptive Trade Practices Act* as found in the **Texas Business and Commerce Code** §17.46.

The *Texas Deceptive Trade Practices Act* provides in pertinent part:

> Sec. 17.46.  DECEPTIVE TRADE PRACTICES UNLAWFUL.  (a)  False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.
>
> (b)  Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
>
> (1)  passing off goods or services as those of another;
>
> (2)  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (9)  advertising goods or services with intent not to sell them as advertised;
>
> (11)  making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;
>
> (12)  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
>
> (14)  misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;
>
> (24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into

-29-

which the consumer would not have entered had the information been disclosed;

102.    Pursuant to **Texas Business & Commerce Code** §17.50, when a Defendant takes any of the foregoing actions, or a Plaintiff relies on the Defendants assertions to his detriment, or the Defendant engages in unconscionable conduct and does so willingly and knowingly, the Plaintiff is entitled to treble damages.

103.    Defendant has violated the ***Texas Deceptive Trade Practices Act*** ( hereinafter DTPA)  in the following respects:

a.    Specifically, Defendant, CTC or CBS advertised telephone services, with intent not to sell them as advertised, as set forth supra.  According to supervisors, the "bundle" price offered (price reduction) could not be provided.  Therefore, the Defendant denied that such an offer was made.  Same is violative of said act with respect to **DTPA** § b (11) of the act.

b.    CTC or CBS represented that it had authority to set the price for and the selection of packages and to provide the for DirecTV for its customers, with all authority regarding services issues, billing problems, etc. being handled by CTC or CBS in violation of **DTPA** §§ b (1)(2)

c.    In addition thereto, CTC or CBS offered bundle pricing, indicating that it had the authority to offer the bundle, including both its services and that of DirecTV in violation of **DTPA** §§ b (1)(2)(12)(14).

-30-

d.    As heretofore set out, CTC or CBS offered a bundle package and contracted for  the bundle package without the intent to honor the contract pricing agreement as it billed for add on fees (such as a sports fee) and taxes, which it failed to disclose, indicating  after billing (upon Plaintiff's query)  that same was required by DirecTV in violation of the  **DTPA** §§ b (1)(2)(9)(11)(24).

e.    Additionally, a CTC or CBS supervisor indicated that the sales person lacked the authority to sell a bundle package and attempted to renegotiate the package rate at a much higher rate than the amount contracted for in violation  the  **DTPA** § b (14).

104.    Because the actions of Defendant, CTC or CBS were knowing and unconscionable, the Plaintiffs are entitled to treble damages as provided for by the Texas Deceptive Trade Practices Act as codified in the  **Texas Business & Commerce Code** §17.46 by contracting with CTC or CBS and/or CTC, offering services jointly to Plaintiff, Davis, as a consumer, while making Plaintiff contractually liable to two parties for the same service.  Specifically, AT & T, DirecTV, and CTC collectively engaged in the following by the "joint service agreement" which impacted on the consumer/Plaintiff, Veronica L. Davis:

1)     passing off goods or services as those of another;

(2)     causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

Specifically each time an issue arose regarding billing or failure to receive a service regarding "cable" services, CTC indicated that the problem was that of DirecTV and had to be resolved by said entity.

(9)  advertising goods or services with intent not to sell them as advertised;

More specifically, theprice for television services were not as advertised by DirecTV, as alleged by Century Link indicating and using as its basis for increase that the prices did not comport with the DirecTV packages.

(12)  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

The parties represented that the agreement regarding the production of television services was for a period of time, and billed and provided by CTC or CBS, thereby stating or implying that the agreement conferred rights and remedies with CTC or CBS.

(24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

Specifically, it was not known at the time of entering into the contractual agreement that other services were necessary to maintain the television services, for example paying a sports fee when there was no sports package in the contracted for bundle package.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays for damages as set out below :

1. Plaintiff, Jeff Kitchen is entitled to a sum to be determined at trial, but which is in excess of $1,000,000.00 for the damages he would in all likelihood have received had his case not been impaired by the actions of Defendant.

2. Plaintiff, Charlie Brown Heritage Foundation is entitled to a sum to be determined at trial, but which is in excess of $800,000.00 for the damages it would in all likelihood have received had his case not been impaired by the actions of Defendant;

3. Plaintiff's  loss of attorney's fees as a result of dismissal of the afore-mentioned cases in an amount to be determined at trial, but which exceeds $810,000.00.

4. Plaintiff's loss of income for not having telephone, internet, and fax services in an amount in excess of $3,000,000.00 from the date of cessation of services through the present;

5. Damages to her credit rating;

6. Damage to her reputation for having been insulted by the Court and  having

same published, as a result of not submitting documentation in a timely

fashion due to lack of proper internet services.  Said damages are in excess

of $5,000,000.00.

7.    Damage to her properties' renovation project and to her home, due to

failure to procure loan proceeds or settlement proceeds which would have

allowed her projects to continue in an amount to be determined by the jury,

but which exceeds $100,000.00.

8.    Any and all sums due for overbilling, but an amount in excess of $1200.00;

for costs incurred to date due to improper current billing;

9.    All appellate costs as a result of the dismissal of cases for the Plaintiffs, Jeff

Kitchen and the Charlie Brown Heritage Foundation. in the approximate

amount of $15,000.00.

10.    All damages resulting from statutory violation of the statutes cited herein;

11.    Mental pain and anguish due to ineffective telephone and internet service

and resulting case and client problems in an amount which may not be

easily calculated.

11.    For such other and further relief to which Plaintiffs may be justly entitled.


Respectfully submitted,

/s/ V.L.Davis


-34-

Veronica L. Davis
Fed. No. 29717
226 N. Mattson
West Columbia, Texas 77486
(979) 248-4583 (Cell)
vld57atal@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Amended Original

Complaint has been sent to all opposing counsel via efiling on this the 2nd day of July,

2022.

/s/ V/L/Davis