United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| VERONICA L. DAVIS, *et al.*, § § Plaintiffs. § § v. § CIVIL ACTION NO. 3:22-cv-00038 § CENTURYLINK, INC., *et al.*, § § Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Defendants DIRECTV, LLC ("DIRECTV") and AT&T Corp. ("AT&T) have filed a Motion to Dismiss Plaintiffs' Second Amended Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"). *See* Dkt. 44. Having reviewed the briefing and the applicable law, I recommend that the motion be **GRANTED**, and that all claims brought by Plaintiffs Veronica L. Davis ("Davis"), Jeff Kitchen ("Kitchen"), and the Charlie Brown Heritage Foundation ("Charlie Brown") against DIRECTV and AT&T be dismissed.

## BACKGROUND

Davis is an attorney. She previously represented her co-plaintiffs, Kitchen and Charlie Brown, in separate lawsuits. Kitchen and Charlie Brown lost both of those cases on summary judgment at the trial court level, and also on appeal. *See Kitchen v. BASF*, 343 F. Supp. 3d 681 (S.D. Tex. 2018), *aff'd*, 952 F.3d 247 (5th Cir. 2020); *Charlie Brown Heritage Found. v. Columbia Brazoria Ind. Sch. Dist.*, No. 3:15-cv-346, 2018 WL 2059203 (S.D. Tex. May 3, 2018), *aff'd*, 771 F. App'x 536 (5th Cir. 2019). Davis blames those losses on poor internet service, claiming that she was unable to timely file summary judgment evidence in both cases because her internet service was down. Had her internet service been working, Davis claims, her clients would have avoided summary judgment, prevailed at trial, and won more than $1 million in damages.

In February 2022, Plaintiffs filed the instant case against CenturyTel Broadband Services, LLC, Central Telephone Company of Texas, and Lumen Technologies, Inc. (collectively, "CenturyLink"), DIRECTV, AT&T, and two debt collection agencies: Credence Resource Management, LLC ("Credence") and Sequeim Asset Solutions, LLC ("Sequeim"). In a recent summary judgment ruling, I held that Davis's claims against CenturyLink are barred by a class action settlement and principles of res judicata. *See Davis v. CenturyLink, Inc.*, No. 3:22-cv-00038, 2023 WL 1111830, at *1 (S.D. Tex. Jan. 30, 2023). I now address DIRECTV and AT&T's efforts to have Plaintiffs' claims dismissed.

With respect to the claims brought against DirecTV and AT&T, the Second Amended Complaint is far from a picture of clarity. For the most part, Davis attempts to hold DIRECTV and AT&T liable, as principals, for the actions of their alleged agents: CenturyLink, Credence, and Sequeim. In essence, Davis claims that CenturyLink acted on behalf of DIRECTV in using improper sales tactics and incorrectly billing Davis; DIRECTV and AT&T improperly reported Davis to the credit bureau after she discontinued her services; DIRECTV or AT&T improperly turned her account over to Credence and Sequeim for collection; and DIRECTV and AT&T were deceptive in disclosing information related to prices and services.

The Second Amended Complaint contains the following causes of action: (1) violations of the Truth-in-Billing Requirements contained in 47 C.F.R. § 64.2401 (the "TIB Requirements"); (2) fraud and fraudulent inducement; (3) breach of contract; (4) negligent misrepresentation; (5) breach of the Fair Debt Collection Practices Act ("FDCPA"); (6) breach of the Fair and Accurate Credit Transaction Act ("FACA"); (7) breach of the Fair Credit Reporting Act ("FCRA"); and (8) violations of the Texas Deceptive Trade Practices Act ("DTPA"). *See* Dkt. 38 at 8.

DIRECTV and AT&T seek to dismiss the Second Amended Complaint for a variety of reasons. These include that: (1) Kitchen and Charlie Brown fail to properly assert a single cause of action against DIRECTV and AT&T; (2) Davis fails

to adequately allege an agency relationship with any co-defendant to state a valid claim against DIRECTV and AT&T; (3) Davis fails to allege her fraud and fraudulent inducement claims with the required specificity; (4) Davis fails to allege the necessary elements of her breach of contract claim; (5) DIRECTV and AT&T are excluded from Davis's federal consumer protection statutory claims; and (6) Davis's DTPA claims are barred by the two-year statute of limitations.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. At this initial pleading stage, I am required to accept as true all well-pleaded factual allegations in the Second Amended Complaint. *See Twombly*, 550 U.S. at 555–56.

## ANALYSIS

### A. KITCHEN AND CHARLIE BROWN FAIL TO STATE A CAUSE OF ACTION AGAINST DIRECTV OR AT&T

DIRECTV and AT&T first argue that Kitchen and Charlie Brown do not bring any causes of action against them in the Second Amended Complaint. In response, Plaintiffs readily concede this point. *See* Dkt. 46 at 10 ("Plaintiffs agree that same is true."). Because Kitchen and Charlie Brown do not state a plausible claim against DIRECTV and AT&T in the Second Amended Complaint, DIRECTV and AT&T's Motion to Dismiss should be granted as far as Kitchen and Charlie Brown are concerned.

Although not necessary, I do think it is helpful to explain precisely why the Second Amended Complaint fails to raise any plausible claim against DIRECTV and AT&T on behalf of Kitchen and Charlie Brown. The Second Amended Complaint states on its very first page that "[a]ll references to Plaintiff shall be to Veronica L. Davis. References to the other Plaintiffs will be designated as Plaintiff, followed by the name of said Plaintiff." Dkt. 38 at 1 n.1. In the lengthy Claims for Relief section, there are 77 references to Plaintiff, but not a single specific reference to Kitchen or Charlie Brown. This clearly indicates that Davis is the only party bringing claims against DirecTV and AT&T.

The Claims for Relief section of the Second Amended Complaint does include two references to "Plaintiffs," but this is not anywhere near enough to survive a Rule 12(b)(6) challenge. The breach of contract claim simply states that "Plaintiffs entered into a contract with Defendant," while the DTPA claim casually mentions that "the Plaintiffs are entitled to treble damages." Dkt. 38 at 32, 44. As DIRECTV and AT&T correctly note: "As to Kitchen and [Charlie Brown], these two allegations fail to adequately plead the required elements of breach of contract and DTPA violations and are entirely conclusory." Dkt. 44 at 7.

### B. DAVIS FAILS TO SUFFICIENTLY ALLEGE AN AGENCY RELATIONSHIP

Davis brings almost all of her claims against DIRECTV and AT&T based on agency principles. The premise of the Second Amended Complaint is that DIRECTV and AT&T are liable for the conduct of other co-defendants, who were allegedly acting as their agents. "Agency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (quotation omitted). An agency relationship "requires both the principal's control over the agent and both parties' consent to the agent's acting on the principal's behalf." *Christiana Tr. v. Riddle*, 911 F.3d 799, 803 (5th Cir. 2018) (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)).

4

In the Motion to Dismiss, DIRECTV and AT&T argue that Davis's claims for affirmative relief should be dismissed because she fails to sufficiently allege—or even mention—the fundamental element of agency: control.

In response, Davis accuses DIRECTV and AT&T of claiming that she must "prove" that an agency relationship exists at this early stage of litigation. But DirecTV and AT&T are doing no such thing. Dkt. 46 at 7. Rather, DIRECTV and AT&T correctly note that in order to plead—not prove or establish—agency, Davis must properly *allege* that an agency relationship exists between the defendants. Merely stating that an entity is an agent does not get a litigant across the goal line. *See Maung Ng We v. Merrill Lynch & Co.*, No. 99-cv-9687, 2000 WL 1159835, at *5 (S.D.N.Y. Aug. 15, 2000) ("[P]laintiffs' conclusory statements that MLIB and Teoh and Elias were 'agents' of MLC, MLG and/or MLIFC do not allege an agency relationship sufficient to withstand dismissal under [Rule 12(b)(6)]. Plaintiffs must do more than state the legal conclusion that MLIB was the defendants' agent, it must plead facts that support a finding that such agency existed." (citations omitted)). As explained below, I agree with DIRECTV and AT&T that Davis fails to plead sufficient facts that either CenturyLink, Credence, or Sequeim acted as DIRECTV and AT&T's agent.

**Credence and Sequeim:** The Second Amended Complaint contains several conclusory paragraphs alleging that DIRECTV and AT&T are liable, as principals, for the actions of Credence and Sequeim for violations of the FDCPA, the FACA, and the FCRA:[1]

> [A]n agency relationship existed between [DirecTV]/ATT and Sequeim and [Credence], as Defendants [DirecTV] and ATT retained the services of said debt collectors to collect debts on its behalf.

---

[1] It is unclear whether Davis intends to also allege that DIRECTV and AT&T are liable under the TIB Requirements for the actions of Credence and Sequeim. Regardless, the one sentence in the Second Amended Complaint potentially alleging such a claim fails because it does not properly plead control. *See* Dkt. 38 at 29 ("Plaintiff also contends that an agency relationship existed between [DirecTV and AT&T] and Sequeim and [Credence], as [DirecTV and AT&T] retained the services of said debt collectors to collect debts on its behalf.").

5

> \*\*\*
> [DirectTV] or ATT (creditor) furnished information to its debt collector (agent).
> \*\*\*
> Plaintiff further alleges that an agency relationship existed between the Defendants AT&T and DirecTV (as principal) with Sequeim and Credence Resource Management, as agents or debt collectors. Said relationship involved collecting debts allegedly owed to AT&T and/or DirecTV by Sequeim and Credence and further reporting that information to credit reporting agencies on behalf of [AT&T, DirectTV, or Central Telephone Company of Texas].

Dkt. 38 at 29, 36, 39. These statements fall far short of what is necessary to survive a Rule 12(b)(6) motion to dismiss. In fact, these paragraphs do not even mention the word "control." Accordingly, Davis fails to allege that DIRECTV and AT&T have the right to control the means by which Credence and Sequeim collect debts.

Davis argues that it "insult[s] the intelligence of both Plaintiff[s] and this Court by seeking to have either believe that Credence and Sequeim would act on [their] own to collect debts for [DIRECTV and AT&T], without some type of agency relationship or contract." Dkt. 46 at 8. But mere business relationships do not automatically create agency relationships. *See Cunningham v. Lifestyles Dev., LLC*, No. 4:19-cv-00006, 2019 WL 4282039, at \*4 (E.D. Tex. Aug. 8, 2019) ("Although Plaintiff alleges a business relationship between Defendant Lifestyles and RCI, Plaintiff does not allege facts supporting an inference that RCI instructed other Defendants and/or unnamed agent or callers to call Plaintiff or show that these entities were in fact acting at the directive or on behalf of RCI." (citation omitted)); *see also* RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f(1) ("An essential element of agency is the principal's right to control the agent's actions. . . . The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."). Here, there is no question that Davis has not specifically alleged that DIRECTV and AT&T had anything more than a business relationship with

6

Credence and Sequeim. Accordingly, Davis's agency claims as they relate to Credence and Sequeim should be dismissed.

**CenturyLink:** Davis's agency claims with respect to CenturyLink allege that only DIRECTV—not AT&T—is liable as CenturyLink's principal. As with Davis's agency allegations as to Credence and Sequeim, Davis here, too, fails to allege that DIRECTV had the authority to control CenturyLink's selling practices. Indeed, nowhere does Davis even use the word "control" when alleging DIRECTV's liability, as a principal, for breach of contract, fraudulent inducement, negligent misrepresentation, or violations of the TIB Requirements and the DTPA.[2] Davis claims that she has pled an agency relationship because she showed "a consensual relation whereby one party is to act for and on behalf of the other." Dkt. 38 at 30. To support this statement, Davis points to "billing records" and "statements made on the internet . . . that DirecTV has vested authority in CenturyLink to act on its behalf in selling satellite services." *Id.* at 29. By "statements on the internet," Davis refers to a page on her online account with CenturyLink that shows a business relationship between CenturyLink and DIRECTV. *See* Dkt. 38-2. Yet, these statements do nothing to allege that DIRECTV had the power to step in and control CenturyLink's selling and billing practices.

Because Davis fails to allege with particularity that DIRECTV had the power to control CenturyLink, she does not sufficiently allege an agency relationship between DirecTV and CenturyLink. Davis's agency claim as it relates to CenturyLink should be dismissed.

C. **DAVIS'S VARIOUS CAUSES OF ACTION FAIL FOR ADDITIONAL REASONS**

Although the inadequacy of Davis's agency allegations is fatal to her claims of indirect liability, DIRECTV and AT&T argue that the Second Amended Complaint fails in other respects. I discuss these arguments below.

---

[2] It is worth mentioning that the word "control" appears only once in Davis's complaint. *See* Dkt. 38 at 29 (presenting the rule statement for establishing an agency relationship).

7

**Fraud and Fraudulent Inducement:** Claims of fraud must be pled to a high degree of specificity. *See* FED. R. CIV. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."); *Benchmark Elecs., Inc. v. J.M Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) ("Rule 9(b) requires the who, what, when, where, and how to be laid out." (cleaned up)).

Davis's allegations of fraud are brief. She claims that CenturyLink and DIRECTV "would receive a higher dollar figure for the provision of services which exceeded the agreed upon amount"; that CenturyLink and DirecTV "promised certain benefits for accepting a bundle . . . for less than what [Davis] was paying"; and that DIRECTV "failed to provide all the information contained in DirecTV's pricing plan." Dkt. 38 at 30–31. These statements come nowhere near the specificity required under Rule 9(b). *See Alvarez v. Fed. Home Loan Mortg. Corp.*, No. H-11-4154, 2012 WL 13050849, at *6 (S.D. Tex. Sept. 18, 2012) (dismissing a claim of fraud for failure to "identify the speakers or the statements with particularity"). It is telling that in her Response to the Motion to Dismiss, Davis wholly fails to address DIRECTV and AT&T's argument that she did not meet the heightened pleading standard required of fraud and fraudulent inducement claims. Accordingly, the fraud and fraudulent inducement claims should be dismissed.

**Breach of Contract:** A plaintiff seeking to recover on a breach of contract claim under Texas law must plead the following: four elements: (1) the existence of a contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). DIRECTV and AT&T argue that Davis's breach of contract claim fails because she did not allege her own performance (i.e., paying her bill), which is the essential second element of a breach of contract claim. *See Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) ("[A] plaintiff must allege her own performance, because a party to a contract who is

8

herself in default cannot maintain a suit for its breach." (cleaned up)). I agree completely. Davis did not even attempt to respond to this argument in her Response to the Motion to Dismiss. Because Davis has failed to plead an essential element of her breach of contract claim, this claim must also be dismissed.

**The FDCPA:** Davis alleges that DIRECTV and AT&T directly violated the FDCPA by trying to collect a debt that Davis claims she did not owe. Davis cannot maintain an FDCPA claim against DIRECTV and AT&T because DIRECTV and AT&T are not debt collectors.

The FDCPA imposes civil liability on "any debt collector who fails to comply with any provision of this subchapter." 15 U.S.C. § 1692k(a). The statute defines "debt collector" as "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). A consumer's creditors are excluded from the meaning of "debt collector" under the FDCPA, unless they are collecting on their own accounts under a different name. *See Koesler v. Beneficial Fin. I, Inc.*, 267 F. Supp. 3d 873, 882 (W.D. Tex. 2016) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

Davis does not allege that DIRECTV and AT&T are debt collectors or creditors liable under the FDCPA. As such, Davis cannot bring an FDCPA claim against DIRECTV and AT&T. *See Rollo v. Chase Home Fin. LLC*, No. H-12-2914, 2013 WL 1390676, at *4 (S.D. Tex. Apr. 4, 2013) ("Although detailed factual pleadings are not required, the plaintiffs have not alleged or identified any facts from which a reasonable fact finder could infer that [defendants] collected the plaintiffs' debt when it was due to another entity or gave a false name in collecting their own debts. As a result, their FDCPA claims must be dismissed.").

**The FCRA:** Davis alleges that DIRECTV and AT&T violated § 1681s-2(a) of the FCRA. Section 1681s–2(a) sets forth the duty for furnishers of information to provide accurate information to a consumer reporting agency. *See* 15 U.S.C. § 1681s–2(a). The FCRA limits enforcement of this section, however, to

government officials. *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("Section 1681s-2(d) provides that enforcement of Section 1681s-2(a) shall be by government officials."). Davis is not a government official. Because there is no private right of action against a furnisher of information for violations of § 1681s-2(a), Davis's FCRA claim against DIRECTV and AT&T must be dismissed. *See Hardaway v. Toyota Fin. Servs.*, No. 4:21-cv-194, 2022 WL 317758, at *5 (E.D. Tex. Feb. 2, 2022) ("Even if Plaintiff's allegation [that a defendant violated § 1681s-2(a)] is true, Plaintiff's claim fails because such violation does not carry a private right of action.").

**The DTPA:** Davis alleges that DIRECTV violated the DTPA by "passing off goods and services as those of [CenturyLink] or by causing confusion or misunderstanding regarding the source of sponsorship or approval regarding pricing, charges, and fees." Dkt. 38 at 43. Davis further alleges that AT&T violated the DTPA by failing to disclose that "other fees were necessary to be afforded the bundle package with [DIRECTV], for example, the regional sports fee." *Id.* at 44.

DIRECTV and AT&T argue that Davis's DTPA claim is barred by the two-year statute of limitations. *See* TEX. BUS. & COM. CODE § 17.565. Davis filed suit on February 2, 2022. To be timely, any alleged violation of the DTPA must have occurred on or after February 2, 2020. Based on the allegations set forth in the Second Amended Complaint, all of the false, misleading, or deceptive statements or representations made by DIRECTV occurred between February 2019 and January 2020. *See* Dkt. 38 at 14, 19. Meanwhile, AT&T's alleged failure to disclose additional fees with Davis's bundle package had to occur before August 19, 2019 because, according to the Second Amended Complaint, that is the date Davis "objected to billing for a regional sports fee." *Id.* at 20–21.

Desperate to avoid dismissal of her DTPA claim based on the statute of limitations, Davis argues that her DTPA cause of action did not accrue until May

10

29, 2020, the date she allegedly sent a "DTPA letter" to DirectTV.[3] Dkt. 46 at 6. This argument is frivolous. Under Texas law, "a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). The date Davis sent a demand letter to DirecTV is completely irrelevant. Taking the allegations contained in the Second Amended Complaint as true, Davis was well aware of the alleged deceptive acts by, at the absolute latest, January 2020. Because Davis failed to bring her DTPA claim by January 2022, the statute of limitations bars her efforts to raise such a claim now. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

## CONCLUSION

For the reasons provided above, I recommend that DIRECTV and AT&T's Motion to Dismiss (*see* Dkt. 44) be **GRANTED**, and that all claims brought by Plaintiffs against DIRECTV and AT&T be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 21st day of February 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] As an aside, Davis claims the "DTPA letter" is attached as an exhibit to the Second Amended Complaint. Dkt. 46 at 6. (citing Dkt. 38-3). The cited exhibit, however, contains no content other than a cover page labeled "Exhibit F."