# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF GALVESTON

| | |
|---|---|
| VERONICA L. DAVIS § | |
| JEFF KITCHEN, AND THE § | |
| CHARLIE BROWN HERITAGE § | |
| FOUNDATION § | |
| § | |
| VS. § | NO. 03-22-CV-00038 |
| § | |
| LUMENS TECHNOLOGIES, INC § | |
| CENTURYLINK § | |
| DIRECTV AND AT & T § | |
| CREDENCE MANAGEMENT AND § | |
| SEQUEIM ASSET SOLUTIONS § | |

## PLAINTIFF'S AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, VERONICA L. DAVIS**, and for cause of actions would show the following:

1. Plaintiff, Veronica L. Davis[1], is a citizen of Texas, residing in West Columbia, Texas, whose address is 226 N. Mattson, West Columbia, Texas 77486. Davis was one of the original Plaintiffs in this cause, however, her causes of action against Centurylink, Lumen Technologies, Century Telephone of Texas and Centurytel Broadband has been dismissed.

2. Plaintiff, Jeff Kitchen, is a citizen of Florida residing at 67 Fall Drive, Port Orange, Florida 32129. Plaintiff is hereinafter referred to as Kitchen in this complaint.

---

[1] All references to Plaintiff shall be to Veronica L. Davis. References to the other Plaintiffs will be designated as Plaintiff, followed by the name of same.

3. Plaintiff, Charlie Brown Heritage Foundation is a nonprofit corporation, whose principal place of business is 301 W. Bernard Street, West Columbia, Texas 77486, but whose mailing address is 226 N. Mattson, West Columbia, Texas, 77486. This Plaintiff is hereinafter referred to as Brown or CBHF in this complaint.

4. Defendant, CenturyLink, Inc [2] is a Louisiana telecommunications Corpration, headquartered in Monroe, Louisiana, whose address is 100 Century Link Blvd, Monroe, Louisiana 71203. Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas, 75201-3136.

5. CenturyTel Broadband services corporate address is listed on the website as100 Century Link Blvd, Monroe, Louisiana 71203.

6. Central Telephone Company of Texas's address is unknown, however, saidparty has filed an answer in this suit, by and through its attorney of record.

7. CenturyLink has repackaged/renamed itself as Lumen Technologies, since the incidents made the basis of this lawsuit, and is a Louisiana telecommunications corporation, headquartered in Monroe, Louisiana, whose address is 100 Century Link Blvd, Monroe, Louisiana 71203. Its registered agent for service is C.T.Corp, 1999 Bryan, Dallas, Texas, 75201.

8. The amount in controversy exceeds the jurisdictional amount of $75,000.00.

9. The court has jurisdiction of this cause pursuant to diversity of citizenship as the Plaintiff , CBHF is from Texas; Plaintiff, Kitchen is currently residing in Florida, and Centurylink and Lumens Technologies have its principal places of business in Louisiana.

10. Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391(a), as the events regarding the termination of the Plaintiff occurred in Brazoria County, Texas

11. All Plaintiffs brings this action pursuant to the 15 U.S.C. § 15. Kitchen and CBHF. bring its cause as a derivative action of Defendants violations of

---

[2] All references to Defendant is to CenturyLink, unless otherwise specified. . References to the other Defendants will be referenced as Defendant, followed by the name of same.

said action in connection to them; Texas Business and Commerce Code 15 §§ 15.01, et seq 15.02, 15.05 ; 15.21; Texas Business and Commerce Code §§ 17.46 and 17.50, breach of contract (Count V); breach of implied-in-fact contract (Count VI); common law fraud (Count VII); Plaintiffs bring its causes of action pursuant to **Sherman Antitrust Act** of 1890[1] (26 Stat. 209, 15 U.S.C. §§ 1–7) ; 47 U.S.C.§ 201(a) of the Federal Communications Act; 47 U.S.C. §1306 et seq; violations of provisions enforced by the FTC through the Communications Act, 47 U.S.C. § 151 et seq , and the amendments to the Act made by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56.

12. Plaintiffs, Jeff Kitchen and the Charlie Brown Heritage Foundation causes of action stemmed from the complaint of Veronica L. Davis, who asserted that due to internet problems, she failed to submit documentation through the process of electronic filing on their cases which ultimately resulted in the dismissal of Plaintiffs' cause of action.  The Court has ordered that Davis replead this cause of action for Kitchen and CBHF only.

## Jeff Kitchen

13. Plaintiff, Kitchen would show that in or around February, 2014, Plaintiff transferred from the BASF plant in Seaford Delaware to take a job at BASF Freeport site.

14. Prior to transfer to the Freeport location of BASF, Plaintiff voluntarily went for inpatient treatment due to his alcoholism, said period being November 15- December 15, 2010 and around November 29, 2013- January, 2014.

15. As part of his continuing treatment plan, Plaintiff received treatment for alcohol use and/or abuse while employed at BASF, Freeport, Texas location., utilizing Defendant's Employee Assistance Program.  After completion of a 90 day outpatient treatment program, the Defendant mandated monthly monitoring beginning on or about October 6, 2014. Plaintiff was required to submit to random urinalysis and/or breathalyzer testing on a monthly basis.

16. On or about September 28, 2015, Plaintiff was called to the medical facility on site (at BASF) for a breathalyzer test.  Upon reporting for testing, technical issues occurred with the machine.

17. Nevertheless, the test was run and Kitchen was told that he failed the breathalyzer test. At all times, Kitchen maintained that he had not been drinking prior to coming to work nor had he been drinking on the job.

18. Kitchen was terminated.

19. Plaintiff contends that he lost several years worth of salary, future wages, pain and suffering which exceed the jurisdictional limits of this Court. At the time of the dismissal of his case, Plaintiff had submitted a damage demand for a figure in excess of $1,000,000.00 or more.

20. BASF withheld his breathalyzer results and violated discovery orders in failing to produce same. However, upon production of the breath test results, it was revealed that Kitchen did not fail the breath tests results as he had asserted.

21. Kitchen moved for summary judgment twice in the course of those proceedings.

22. Plaintiff submitted summary judgment evidence of disability; that the reasons proffered by the Defendant were in all things false, and that he did not violate his Return to Work Agreement as proffered by the Defendant in that case.

23. Substantial exhibits were also tendered in support of both of Kitchen's Motions for Summary Judgment. Both summary judgments were denied.

24. The Defendants moved for summary judgment also. Plaintiff filed its Opposition thereto.

25. However, the exhibits attached to its Opposition did not transmit, even though the Opposition itself were transmitted. Consequently, Plaintiff's counsel, submitted the exhibits, in smaller and condensed sections on the following day.

26. The Court reprimanded Davis and refused to accept the late filed exhibits.

27. The importance and impetus of these seeming irrelevant facts are these:

    a) the Court asserted that the documents were one day late;

b) If Plaintiff, Davis, had filed no opposition exhibits at all, with respect to her Opposition to Defendant's Motion for Summary Judgment, these documents were already of record as attachments.

c) Plaintiff need only show that it exercised diligence regarding why it does not have the evidence to oppose the summary judgment or explain why efforts have not yielded the necessary facts. Culwell v. City of Fort Worth, 468 F.3d 868, 872-73 (5th 2006)

27. Plaintiff's Summary Judgment evidence was cited and already in the record from its Motions for Summary Judgment previously filed by Plaintiff. Because Petitioner already had exhibits on file, said exhibits were of record and could be considered pursuant to **Federal Rules of Civil Procedure** 56(c)(3), without her having to file the exhibits again in opposition to Defendant's Motion for Summary Judgment.

28. The court need consider only the cited materials, but it may consider other materials in the record.

**Federal Rules of Civil Procedure** 56(e) along with the Advisory Committee notes specifically states:

> Subdivision (e) addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of f act as required by Rule 56( c ). As explained below, summary judgment cannot be granted ***by default**** even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56 ( c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step.[3]

## Charlie Brown Heritage Foundation

29. The Charlie Brown Heritage Foundation was an entity formed in or around

---

[3] The legal premises set forth ¶¶ 25-28 hold true for CBHF and therefore are not repeated.

        2010, primarily to preserve the Charlie Brown School which had been abandoned by the Columbia Brazoria Independent School District, hereinafter, CBISD.

30. The property had been deeded in large part by Charlie Brown, a freed slave who became Texas first Black millionaire for the education of Black students prior to integration. Consequently, the building and property had great historical significance to the Black community, as well as to Black alumni who attended the Charlie Brown School.

30. Upon a complaint by the City of West Columbia, the City asked the school district to exercise its reversionary interest and take the property away from the CBHF.

31. By letter, the District sought to do just that and mandated that the organization's members not enter on to the premises again.

32. CBHF brought suit for violations of its civil rights, including claims of discrimination pursuant to 42 U,S,C. 1983, denial of Equal Protection and denial of due process under the **United States Constitution. Amendment Fourteen.**

33. The Court granted its Equal Protection claims pursuant to the **United States Constitution**, amendment Fourteen.

34. However, it granted Defendant CBISD's Motion for Nonsuit. to Dismiss, without enforcing or considering its own Equal Protection ruling.

35. Also during the pendency of this case, Plaintiff sought to file a response to the Defendant's Motion for Summary Judgment.

36. It is the belief of this party that a document was submitted without exhibits, either because the draft was submitted or the exhibits also did not go through. Plaintiff did not review all relevant portions of the file to ascertain same due to time constraints.

37. In either instance, both cases involved failure to submit documents due to technical issues pertaining to the internet, which either resulted in dismissal, sanction, or reprimand and impacted on the decisions made in both cases.

CAUSES OF ACTION

38. Pursuant to the promulgation of rules, the Federal Court system mandated that all attorney filings be submitted through the electronic filing process. It appears that Case Management/Electronic Case File Management began in 2002. Federal Rules of Civil Procedure 5(d)3(a) makes it mandatory for attorneys to file electronically.

39. Plaintiff, Davis had complained of spotty and absent internet service to Defendant Centurylink prior to and after the incidents involving Plaintiffs Kitchen and Charlie Brown. Davis contends that transmission issues due to faulty service is one such event that impacted on the ability to transmit documents.

40. At one point, Centurylink advised Plaintiff, Davis that internet processing and problems were due to a faulty modem. Replacement of that modem did not effectuate a change in internet problems.

41. Plaintiff, Davis was subsequently advised that her internet was operating at only 10% by technical support. Technical support sent out a technician who performed some type of repair and reported the same problem that tech support indicated.

42. At all times relevant herein, Davis had contracted for and paid for high speed internet. Davis did not get the speed or transmission capability that she contracted for.

43. Davis, had a contractual agreement with Centurylink to provide telephone and internet services. The provision of those services were essential to the running of her law practice. As a client of Davis, Kitchen and CBHF had the reasonable expectation that all documents would be tendered to support, defend, or provide any service necessary to proceed with their cases. Kitchen detrimentally relied on the ability of the attorney to transmit documents to support his position that he was wrongfully terminated on the basis of a disabling condition. The inability to transmit documents ultimately resulted in the dismissal of his case. Likewise, CBHF had the reasonable expectation that tender and submission of documents to support or defend its case would be completed.

Neither party had any expectation that transmission issues and internet

issues would prevent the transmission of documents in its cases.

43. Davis contends that she had a contract with Centurylink, 1) either express or implied; 2) that the contract was valid 3) that one of the terms of the contract is that Centurylink would provide high speed internet service and that the service would work. Plaintiff breached that duty in that internet service often did not work, was faulty or spotty and therefore 5) a breach of a duty arose under that contract, and (6) and there was resulting damage to all of the Plaintiffs.

   Centurylink breached the contract, whether express, written, or implied to provide her with high speed internet services, without faulty or spotty transmission issues. Said contract was to inure to the benefit of plaintiffs, Kitchen and CBHF. A breach of contract to Davis resulted in damage to these plaintiffs.

44. Upon learning of the class action lawsuit with Centurylink and reading that there were problems with the integration of its systems, Davis believed that transmission did not occur due to the size of the documents submitted, as she had originally believed, but rather that it was failure to integrate its systems that prevented and lack of appropriate transmission speeds that prevented the documents from transmitting.

   The language contained therein bears out this notion:

   ¶ 64. For decades, CenturyLink operated as a small rural telephone operator. In 1989, CenturyLink began a period of aggressive acquisitions to add customers and revenue.

   ¶65. Most notable of these acquisitions were the 2009 and 2011 acquisitions of Embarq Corporation and Qwest Communications International, Inc., respectively, which gave CenturyLink market presence in 37 states.

   ¶67. But as CenturyLink expanded, it chose not to adequately invest in technologies that would integrate the platforms from its various acquisitions into one cohesive sales and billing system.

   ¶68. The ongoing corporate decision not to integrate the internal computer systemshas resulted in a byzantine system where it was

        impossible to uniformly access and share information across the myriad platforms and computer systems that comprise CenturyLink.

¶ 124d of said complaint indicates that CenturyLink entered into a Consent Decree with the Arizona Attorney General prohibiting it from misrepresenting the speed of its internet speeds.  Centurylink violated said order.

45.    Plaintiff contends that in order to transmit documents, CenturyLink must provide a system to integrate its telephone and internet services to allow transmission of information via internet.  Moreover, it must provide sufficient internet speed for same to occur.  As contained in the complaint, Centurylink acknowledged in the Consent Decree that it was not doing so.

46.    Plaintiff contends as set out above, that the timeliness was not at issue, as a one day transmission issue does not comport with the manner in which the Court handled late transmissions of Defendant or its refusal to comply with court orders regarding discovery.

   Rather, the issue was transmission speeds and Centurylink knew or should have known that same would have and did have deleterious effects on Plaintiff's business and the clientele that she served.

47.    Plaintiff relied on Centurylink and its progeny to provide the internet and telephone services for which she paid.  Plaintiff's clients relied on Plaintiff to have sufficient telephone and internet services to handle and transact business on its behalf.

48.    One who, in the course of business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. (¶ 509)

49.    Defendant's omissions of material fact to Plaintiffs were deceptive and misleading in contravention of the Texas Deceptive Trade Practices Act, codified in the **Texas Business and Commerce Code** 17.46 as set out below:

Sec. 17.46.  DECEPTIVE TRADE PRACTICES UNLAWFUL.  (a)  False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b)  Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(1)  passing off goods or services as those of another;

(2)  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(5)  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

(7)  representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(9)  advertising goods or services with intent not to sell them as advertised;

(10)  advertising goods or services with intent not to supply a reasonable expectable public demand, unless the advertisements disclosed a limitation of quantity;

(11)  making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

(12)  representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(13)  knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(20)  representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in excess of those which are appropriate to the goods;

(22)  representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

((24)  failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

50. After the filing of this suit, Centurylink negated any fault or liability regarding internet services, indicating that CenturyTel Broadband was the provider of said services. (1)(2). Moreover, it indicated the need for replacement modems to correct the problem and that said work had been performed (7,13,22) when it at all times knew that the problems were either transmission problems, system integration problems, or that the demand for service was too great for the its equipment.

51. Defendant's omissions of material fact toward all Plaintiffs were deceptive and misleading.

52. Due to its superior position, exclusive knowledge, and partial disclosures, Defendant had a duty to disclose the material facts it concealed from Plaintiffs regarding the described misconduct.

53. CenturyLink was negligent and reckless in making its omissions, as it had a duty to provide accurate and complete information with care to its customer (Davis), who had a right to rely on that information. CenturyLink breached that duty by providing inaccurate information and concealing material facts without exercising due care to ensure that she was fully and accurately informed, so that she could pass that information on to her clients, including but not limited to Kitchen and CBHF or have them obtain other counsel in the eventuality that transmission problems prevented her from filing

necessary documents.

54. Plaintiffs contend that due to failure of internet transmissions, Defendant may have engage in "throttling"to interfere with and limit subscribers' internet communications.. This practice of throttling was not authorized by Plaintiff, Davis. Throttling interferes with subscribers' ability to share content through peer-to-peer (P2P) transmissions. ( Id. ¶ 25.) Computers exchange information on the internet by using Transmission Control Protocol ("TCP"), which delivers a stream of bytes from one program on one computer to another. Plaintiff contends that same occurred in the instant case.

    In any instance, promising that the a Plaintiff is receiving a service which is not receiving or which is not at the rate of speed promised for a higher cost constitutes fraud.   The quality of internet service she received could not be called high speed under the nature of the parties' agreement or any meaning of the phrase.

54. Plaintiffs justifiably relied on Defendant's omissions of material fact that it made to Davis. Had Defendant informed Plaintiffs of material facts, they would have acted differently, including but not limited to—if able—taking steps not to transact with Defendant and/or to obtain their internet and telephone services from another source.

55. At the time of the incidents made the basis of this suit, however, there were no alternative providers.  If Davis had  realized that there would be transmission issues due to internet problems, she would have begun the transmission process from another location or city with a different service provider.

56. Because Centurylink was the only service provider in the area, it held a monopoly which impacted on both she and her clients, Kitchen and CBHF.

57. Plaintiffs would show that because Plaintiff Davis had no other option but to have service with Centurylink, as there was no other entity available to provide telephone and internet services, due to the monopoly that Centurylink had in the area, including failure to allow the laying of cable by other companies, a monopoly was created which impacted on the Plaintiff's abilities to receive telephone and internet services .

58. This unilateral conduct monopolized or attempted to monopolize the relevant market. in contravention of the **Sherman Antitrust Act** of 1890[1] (26 Stat. 209, 15 U.S.C. §§ 1–7) which is a United States antitrust law which prescribes the rule of free competition among those engaged in commerce.

    A)  Plaintiffs contend that contracts with consumers occurred which constituted a restraint of trade or commerce among several states, as shown by the number of complaints contained in the Minnesota class action suit. (Section 1 infra)

    B)  Moreover they violated Section 2 infra of the Act which provides in pertinent part that:

    Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States. A Section 1 violation has three elements:

    (1) an agreement;

    (2) which unreasonably restrains competition; and

    (3) which affects interstate commerce.

    A Section 2 monopolization violation has two elements:

    (1) the possession of monopoly power in the relevant market; and

    (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

59. Plaintiffs would show that Defendant has monopolized the transmission lines with some entity, which only allowed Centurylink services within the City of West Columbia at the time of the incidents made the basis of this suit, which unreasonably restrained competition and affected interstate commerce, as telecommunications services impacts interstate commerce.

> In the Mulit-State litigation, it was established that Centurylink took aggressive steps to acquire all smaller telephone companies and their lines, thereby creating a monopoly.  At the time of the incidents made the basis of this suit, Plaintiff, Davis, had no choice but to use Centurylink as its carrier, and remain with Centurylink regardless of the poor service, as no other options existed.
>
> This monopoly likewise impinged on her clients, Kitchen and the CBHF.

60. CenturyLink is a common carrier engaged in interstate communication by wire for the purpose of furn ishing communication services as defined in 47 U.S.C.§ 201(a) of the Federal Communications Act ("Communications Act").

61. Carriers are responsible for the conduct of third parties acting on the carrier's behalf, *See* 47 U.S.C. § 217 ("In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.").

62. Section 201(b) of the Communications Act prohibits "unjust" and unreasonable" practices "in connection with such communication service." At all times relevant hereto, 47 U.S.C.§ 201(b), provided, in relevant part, as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful…

63. Plaintiffs contend that the acts of Centurylink in failing to provide appropriate and properly working internet services were unjust and unreasonable and resulted in the damages the Plaintiff herein claim.

64. Title II of the 1934 Communications Act requires that:

> All common carriers are subject certain duties, including that they "furnish

. . . communication service upon reasonable request," engage in no "unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services," and charge "just and reasonable" rates.

Defendants failed to do so.

65. Plaintiffs would further show that Defendants has violated the laws governed by the Federal Trade Commission with respect to deceptive trade practices and that said agency has the authority to (a) prevent unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce; (b) seek monetary redress and other relief for conduct injurious to consumers; (c) prescribe trade regulation rules defining with specificity acts or practices that are unfair or deceptive, and establishing requirements designed to prevent such acts or practices; (d) conduct investigations relating to the organization, business, practices, and management of entities engaged in commerce; and (e) make reports and legislative recommendations to Congress.

66. Therefore, Plaintiff MAY seek a stay in this action until the Federal Trade Commission investigates said acts on behalf of Plaintiff, Davis, and on its effects on Plaintiffs, Kitchen and CBHF are subject to investigation and determination.

67. Plaintiffs contend further that Defendants breached the "Telecommunications Act Title II. 47 U.S.C. § 153(51) ("A telecommunications carrier shall be treated as a common carrier under [the Communications Act] only to the extent that it is engaged in providing telecommunications services.")..." U.S. Telecom Ass'n v. Fed. Commc'ns Comm'n, 825 F.3d 674 (D.C. Cir. 2016) by the acts set out above.

68. Centurylink, together with Central Telephone and CenturyTel Broadband engaged in a course of conduct which amounted to a combination or conspiracy in restraint of trade in, and that such conduct also constituted monopolization, or an attempt or conspiracy to monopolize, in violation of Texas Business and Commerce Code § 15.

69. Plaintiffs further contend that the Defendants have committed Civil Intracorporate Conspiracy, in that Centurylink, CenturyTel Broadband Services and Central Telephone Services have conspired to provide less than appropriate internet services, then claim the other company is

responsible for said problem, while negating the involvement of Centurylink and Lumens Technologies. More specifically, Centurylink denounces its liability with respect to the failure to provide internet services and declares that it is not even a party. Plaintiff would show that Centurylink, CenturyTel Broadband Services and Central Telephone Services have conspired together in the lack of provision of services and to confuse the issue of who is responsible for the problem by stating that Centurylink is a nonentity.

Said conspiracy resulted in a constraint of trade.

70. The foregoing acts resulted in damages to Plaintiffs, Kitchen and CBHF, as clients of Davis. It was reasonably forseeable by Centurylink that Davis would use telephone and internet service in her business. The ability to transmit documents in her role as an attorney are not only mandated by the Courts, but forseeable by the Defendants. Consequently, Defendants are liable for the damages incurred by plaintiffs as a result of improper or inadequate internet services.

DAMAGES

71. Plaintiff, Kitchen, at the time of the incidents made the basis of his lawsuit , Plaintiff had lost $118,000. 00 and an additional$102, 825.00 for the year 2016.

72. Plaintiff expected a continued loss of wages at the rate of $281.85 per day, not including pay increases and overtime. Plaintiff has been unable to locate suitable employment due to his termination and/or his age. Plaintiff expected to be employed until retirement age of 65 or longer. Therefore, Plaintiff contends that as a result of his termination, he has lost future earning in the approximate amount of $925,425.00.00.

73. Plaintiff has further depleted most of his savings and retirement in attempting to maintain his bills pay for costs of living, etc. Plaintiff has spent $119,686.00 *of his retirement benefits* attempting to stay afloat, thereby depleting benefits/monies set aside for his retirement.

74. The Charlie Brown Heritage Foundation was capped by statutory restrictions to an amount of $600, 000.00 under the provisions under which it sued.

75. A JURY DEMAND IS HEREIN MADE.

**PRAYER FOR RELIEF**

    **WHEREFORE PREMISES CONSIDERED**, Plaintiff prays for judgment as follows :

1. That the Court grant Plaintiffs compensatory damages,
2. That the Court grant all damages outlined above;

3. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the 42 U.S.C. § 1988;

4. That the Court reinstate Davis as a party allowing that these causes be included for her as a party Plaintiff;

5. That the Court grant Plaintiffs a jury trial;

6. That the Court grant Plaintiffs all such other and further relief the Court deems just and proper.

    Respectfully submitted,

    /s/ Veronica L. Davis

    Veronica L. Davis
    222 N. Mattson
    West Columbia, Texas 77486
    (979) 248-4583
    vld57atal@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been sent to all counsel via efiling on this the 24th day of March , 2023.
    /s/ V.L. Davis