# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF GALVESTON

|  |  |  |
|---|---|---|
| VERONICA L. DAVIS | § | |
| JEFF KITCHEN, AND THE | § | |
| CHARLIE BROWN HERITAGE | § | |
| FOUNDATION | § | |
| | § | |
| VS. | § | NO. 3:22-cv-00038 |
| | § | |
| LUMENS TECHNOLOGIES, INC | § | |
| CENTURYLINK | § | |
| DIRECTV AND AT & T | § | |
| CREDENCE MANAGEMENT AND | § | |
| SEQUEIM ASSET SOLUTIONS | § | |

## <u>PLAINTIFF'S THIRD AMENDED ORIGINAL COMPLAINT</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COMES NOW, VERONICA L. DAVIS**, and for cause of actions would show

the following:

    1.    Plaintiff, Veronica L. Davis[1], is a citizen of Texas, residing in West

Columbia, Texas, whose address is 222 N. Mattson, West Columbia, Texas 77486.

    2.    Original Defendants to this suit were Centurylink, Lumen Technologies,

CenturyTel Broadband, Inc and Central Telephone Company of Texas. All were properly

served through their registered agent for service and have been dismissed from this cause

---

    [1] All references to Plaintiff shall be to Veronica L. Davis. References to the other
Plaintiffs will be designated as Plaintiff, followed by the name of said Plaintiff.

by virtue of a Motion to Dismiss, which was ruled on as a Motion for Summary Judgment on the basis of res judicata. Therefore, this Amended Complaint is not against said parties, by order of the Court.

2.      DirecTV, hereinafter referred to as DTV, is   a corporation whose principal place of business is located at 2230 E. Imperial Hwy, El Segundo, California 90245. Said entity was properly served  through its registered agent for service, Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company.  The service address for said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. The Corporate Disclosure Statement of DirecTV indicates that DirecTV, LLC is a wholly owned subsidiary of DirecTV Holdings LLC.  Said party was properly served in this cause and  filed a Motion to Dismiss in this cause, which was granted.

3.      AT & T, hereinafter referred to as ATT is a corporation whose principal place of business is at 208 S.  Akard St., Dallas, Texas . At the time of the incidents made the basis of this lawsuit, it is believed that A T & T and  DirecTV merged, thereby making DirecTV either a wholly owned subsidiary of AT & T or some other entity within or under the umbrella of AT& T.  The Corporate Statement indicates that A T & T Corp or A T & T Inc. is the correct party and that A T & T Corp is a wholly owned subsidiary of A T & T, Inc., a Delaware Corp. .  Said party was properly served in this cause and filed a Motion to Dismiss in this cause, which was granted.

4.    Credence Resource Management, hereinafter referred to as Credence or CRM, is a corporation or business entity, organized in Georgia,  which acts a collection agent for either A T & T, DirecTV, or both.  Its principal place of business is 4222 Trinity Mills Rd., Suite 260 Dallas, Texas 75287.  The Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company is the registered agent for service.  The service address for said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. .  Said party was properly served in this cause and filed an answer in this cause.

5.    Sequeim Asset Solutions, LLC, hereinafter referred to as Sequeim or SAS, is a corporation or business entity, organized under the laws of Georgia,  which acts a debt collector or collection agent for either A T & T, DirecTV, or both.  Its registered agent for service is Chelsey Martine, acting as vice president for Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company.  The service address for said registered agent is 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.    Likewise, this Court has personal jurisdiction over DirecTV because it conducts business in this District and has sufficient minimum contacts in this District.

7.    Likewise, this Court has personal jurisdiction over A T & T because it conducts business in this District and has sufficient minimum contacts in this District.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332. This Court has supplemental jurisdiction over

Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

9.    Venue has already been deemed proper pursuant to **28 U.S.C. § 1391(a)(2)** and ( c ) as a substantial part of the events or omissions giving rise to this claim due to the business transacted in Brazoria County, Texas by CenturyLink, CTC, CBS, DirectV and A T & T. Likewise, Defendants CRM and Sequeim Asset Solutions, though "incorporated" in other states, have done business in the State of Texas and had sufficient minimum contacts with this State and with the Plaintiff, who is a resident of Brazoria County to be subject to venue and jurisdiction of the Southern District of Texas.

## CAUSES OF ACTION

10.    Plaintiffs bring this action pursuant **47 C.F.R. § 64.2401**; the **Fair Credit Reporting Act codified at 15 U.S.C. § 1681 et seq** , the **Fair and Accurate Credit Transaction Act 15 U.S.C. § 1681 et seq** and the **Fair Debt Collection Practices Act** 15 U.S.C. 1692 et seq.  Plaintiffs bring supplemental claims for breach of contract (express and implied), violations **Texas Business and Commerce Code** (Texas Deceptive Trade Practices Act, fraud and fraudulent inducement.

## FACTUAL BACKGROUND AND CLAIMS

11.    Plaintiff obtained telephone and internet services some time prior to 2014. At some point, Centurylink purchased the company with which Plaintiff had telephone services.  Consequently Plaintiff became a Centurylink customer.  Additionally, Plaintiff acquired internet services with Centurylink.

12.     During the time that Plaintiff had telephone and internet service with Centurylink, she found said services to be either problematic or inadequate.

13.     Due to the myriad problems,  Plaintiff decided to  discontinue her telephone and internet services, even though same were essential to her business. Plaintiff determined that fluctuations in monthly billing which were contrary to Centurylink's fixed price plan, coupled with spotty and/or nonexistent internet service, and overall dissatisfaction with the services provided by Centurylink, hereinafter, CL, resulted in said decision.

14.     Consequently, in or around January or February, 2019, Plaintiff, contacted and notified  CenturyLink to discontinue telephone and internet service on the day after said call.

15.     Because services were terminated on the same day, rather than the follow-ing day, as requested, Plaintiff contacted  CenturyLink the following day in order to obtain message retrieval from her voice mailbox.   CL's Loyalty Department urged Plaintiff to retain/reinstate her service and made her  an offer to remain with her current plan (which included unlimited telephone services and internet) with the addition of satellite television services from DirecTV, at a lesser rate than Plaintiff was already paying.

16.     Plaintiff accepted said offer.

17.     On the day of installation, the DTV service technician left Plaintiff's door

open and a bat entered her premises. Additionally, he installed a "mini genie" which was supposed to be a device that could be moved from one television to another to receive satellite programming.

18.    Plaintiff learned, when she subsequently attempted to move same,  that the mini genie  had been hardwired and was incapable of being moved and dedicated to the television on which it was installed.

19.    Plaintiff complained to Centurylink regarding being billed for a moveable mini genie, when same was actually hardwired.  Upon initial complaint, the agent failed to remove and remedy the improper charges for same and directed Plaintiff to contact DirecTV to sort out this billing issue.  Plaintiff contacted both DTV and CL.

20.    On a subsequent CL bill, Plaintiff noted a Regional Sports fee from DTV, which she was not advised of nor agreed to during the "satellite promotion call" with Centurylink.   Upon complaint to Centurylink, the Centurylink agent responded that Plaintiff should contact DTV to eliminate the charge.  Plaintiff was told by Centurylink that the fee was not optional, but rather mandatory for having DirecTV, and therefore, the fee would not be removed, stating further that the time to contest the fee expired at or near the time of entering into a contract for services. [2]

---

[2]  According to the representative, contesting the fee would have been required prior to being billed for the fee and at such a time when the Plaintiff would have no knowledge of said fee.

21.    Additionally, Plaintiff saw a DirecTV protection plan cost on her Centurylink bill which was not discussed with Plaintiff nor ordered by her at the time that Centurylink signed her up for DirecTV service. Plaintiff contends that CenturyLink, acting in concert with DirecTV or ATT was an agent for DTV satellite services or was contractually bound with DTV to sale such services.  CL increased pricing for television satellite services, while purporting to provide a discount to Plaintiff.

21.    Consequently,  Plaintiff, discontinued  DTV due to the aforementioned issues, as well as other issues.  DTV discontinued Plaintiff's service, but sent a separate bill, while prior to the discontinuation of services,  billing had occurred on the CL telephone bill,  due to Plaintiff's direct correspondence with DirecTV or CenturyLink's notification of the discontinuation of services.

22.    Plaintiff then  tendered complaint letters and demand letters to DTV.

**Referral to collections**

23.    DirecTV discontinued Plaintiff's service, though it asserted that it was still providing satellite services to Plaintiff.  Plaintiff disputed same. Additionally, Plaintiff sought arbitration with DirecTV, pursuant to its protocol.  However, DirecTV did not participate in arbitration.  Instead, on June 22, 2020, DirecTV called indicating that it would zero out Plaintiff's account and not report any negative information to the credit bureau via a voicemail message, which Plaintiff retained.

24.    In spite of stating that it zeroed out plaintiff's account,  DirecTV or A T &

T, after discontinuing service,  turned the account over to Defendants Credence Resource Management and Sequiem Assets Solutions for collection.   Both Defendants reported a delinquent account or bad debt on Plaintiff's credit information/history.  Plaintiff was notified of same by  her credit card company.

25.    The reporting of a negative account on Plaintiff's Credit Journey  report led Plaintiff to seek to ascertain the nature of the charges and from whence they originated. Plaintiff learned that it was an A T & T charge.  Plaintiff questioned said charge, as A  T & T did not  service the area in which Plaintiff resided or worked.

26.    The account was sent to collections by either DirecTV or  A T & T.  Same was in contravention of the "post arbitration response" in which DTV did not elect to go to arbitration, but rather agreed to remove the balance from the account.

27.    Plaintiff upon discovering same, contacted Defendants Credence Resource Management  and Sequeim Asset Solutions to discover the nature of the debt, who reported the debt to said debt collectors and the amount of the debt.

28.    Plaintiff contacted  both entities by telephone and followed up same with emails and letters.

29.    Upon contacting Credence Resource Management, the representative indicated that she found no account bearing Plaintiff's name or address, as evidenced by a recording produced in discovery by Defendant on or about September 06, 2023.  Said record indicates that plaintiff contracted CRM and spoke with Myra? Green, who

indicated that she could not find an account for Plaintiff when searching by telephone number nor name. She then asked for Plaintiff's social security number to search in that manner.  Plaintiff would not give out her social security number over the telephone. Consequently,  Defendant did not provide evidence of an account with CRM.

30.    CRM further indicates that the charges are for early termination of the account with DirecTV. (See Responses to Interrogatories- Exhibit A pg 8, attached and incorporated by reference, the same as if fully copied and set forth herein.

## CLAIMS FOR RELIEF

31.    Defendant CRM, attached a letter to its discovery responses dated October 20, 2020  which purports to notify Plaintiff that CRM is collecting a debt for DirecTV in the amount of $202.12.  (See Exhibit B pg 2, attached and incorporated by reference, the same as if fully copied and set forth herein

32.    Plaintiff did not receive notice of that debt, to the best of her recollection and first became aware of CRM and Sequeim when a derogatory statement was placed on her Credit Journey information.  Credit Journey is a resource provided by Chase Bank which alerts the consumer/Plaintiff to changes to its credit report, negative reporting, credit inquiries, etc with said information being obtained from Experian or Equifax, or one of the other credit bureaus.

33.    Upon reporting that said debt was an invalid debt, Defendant, Sequeim removed the debt.  Defendant CRM reported that it did also, but placed the debt back on

Plaintiff's credit profile, according to Defendant's discovery responses. (See Exhibit C,

attached and incorporated by reference, the same as if fully copied and set forth herein).

### CAUSES OF ACTION

34.     Centurylink billed for DirecTV for satellite services Plaintiff's Centurylink

telephone bill. At all times relevant hereto, 47 C.F.R. § 64.2401, entitled **"Truth-in-**

**Billing Requirements**," was applicable and  provided, in relevant part, as follows:

> (b) Descriptions of billed charges. Charges contained on telephone bills must be
> accompanied by a brief, clear, non-misleading, plain language description of the
> service or services rendered. The description must be sufficiently clear in
> presentation and specific enough in content so that customers can accurately assess
> that the services for which they are billed  correspond to those that they have
> requested and received, and that the costs assessed for those services conform to
> their understanding of the price charged…

> (d) Clear and conspicuous disclosure of inquiry contacts. Telephone bills must
> contain clear and conspicuous disclosure of any information that the
> subscriber may need to make inquiries about, or contest, charges on the bill.

35.     The charges contained on CenturyLink or CTC's bills to Plaintiff were not

accompanied by "clear, non-misleading, plain language description of the service or

services rendered" nor did they "contain clear and conspicuous disclosure of [ ]

information that the subscriber may need to make inquiries about, or contest, charges on

the bill," in violation of **47 C.F.R. § 64.2401**.   More specifically it failed to outline the

charges with DirecTV.  For example, Centurylink never disclosed that DirecTV services

were for a contractual period beyond the discontinuing of services with Centurylink,

thereby binding Plaintiff contractually to Defendant, DirecTV.  Subsequently CRM

indicates in discovery that the charges for which DirecTV billed was for early termination charges. (See Exhibit A, attached and incorporated by reference, the same as if fully copied and set forth herein).

36.    Plaintiff would show that even though the "Truth in Billing" issues were required of Defendants CL and DTV, SAS, and CRM, as part of the dispute, investigation, and reinvestigation as outlined,  had a duty to verify the billing once the billing issues were disputed.  Plaintiff contends that the acts of CL, DTV, CRM, and SAS are so inextricably intertwined, that each is culpable for damages to Plaintiff pursuant to said provision.

37.    Plaintiff would show that Defendants, CRM and Sequeim, in the collection of the debt on behalf of DirecTV, violated the **Fair Credit Reporting Act, 15 U.S.C. 1681s-2(a)(1)(A)** because said Defendants were  duty bound to ensure that  DirecTV and these Defendants (CRM and SAS) actually reported clear, accurate, and nonmisleading charges, because disputed charges require investigation of disputed charges.

38.    When information is inaccurate, incomplete, or cannot be verified, the credit reporting agency or debt collector must notify the creditor and cease reporting that information. **15 U.S.C. 1681s-2(a)(1)(A)**.  CRM did not, in contravention of the referenced statute.

.    39.    Though notified that the debt was inaccurate, Defendants DTV, ATT,  SAS and  CRM failed to investigate the alleged debt or dispute in contravention of 1681s-2(a)(3).  **The Fair Credit Reporting Act** requires creditors to correct erroneous

information promptly.

40.    **The Fair Credit Reporting Act** further requires that  CRM and Sequeim, along with the creditors must furnish to a credit reporting agency when the consumer *disputes* the accuracy of the information **15 U.S.C. 1681s-2(a)(3).**  These Defendants failed to do so, in contravention of the referenced statute.

41.    Plaintiff disputed the accuracy of the charge placed on Plaintiff's credit report by CRM and Sequiem, which triggered a duty of CRM and Sequiem to reinvestigate the disputed information as set forth in the **Fair Credit Reporting Act, 15 U.S.C.§ 1681i)**

(1) Reinvestigation required.

(A) In general. If the completeness or accuracy of any item of information contained in a
consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

42.    Defendant provided no evidence that it did same.

43.    According to the information provided by the debt collector, it reported information to the both Transunion , Equifax , and Lexis Nexis of the dispute regarding the account.  Pursuant to Defendant's responses to Request for Production.  (See Defendant's Responses to RFP (Bates pg. 4.5.9.16, 25, 27, 29, 61).

2) Prompt notice of dispute to furnisher of information.

(A) In general. Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

(B) Provision of other information from consumer. The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

44.    In this instance, according to the documents, prior to notification to Plaintiff, CRM notified the credit bureaus of the debt- therefore being the first furnisher of information regarding the debt.  Upon notification of the dispute by CRM, the credit bureau was to provide information regarding the dispute to both CRM and the Plaintiff, according to the statute. The reporting to said entities and the duty to investigate were so inextricably intertwined that it resulted in a violation of the rights of Plaintiff.

45.    Defendant, CRM indicates that upon reporting the dispute to DirecTV, the derogatory information was removed.  The notations on the file indicate that it was.  (See Exhibit A  attached and incorporated by reference, the same as if fully copied and set forth herein).  However, after the dispute it was reinserted on Plaintiff's credit file, with the debt becoming active again without investigation, reinvestigation, or verification of the validity of the debt in contravention of the Fair Credit Reporting Act which requires:

(B) Requirements relating to reinsertion of previously deleted material.

(I) Certification of accuracy of information. **If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate**. [Emphasis added]

(ii) Notice to consumer. If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency

46.    Defendant failed to provide such notification regarding the reinsertion of the debt in writing.  CRM's discovery responses documents indicate that another notice was sent in October, 2021, however, Plaintiff finds no such documents in her papers.

47.    Additionally, Defendants failed to meet the time guidelines pursuant to the foregoing provision.  Moreover, it could not reinsert the information on Plaintiff's credit file.  Additionally, it failed to ascertain the accuracy thereof and failed to do so within the five business days required by law.

48.    Defendant negates liability under the statute on the basis that some of the foregoing duties are the sole responsibility of the credit bureau.

49.    Plaintiff would show that CRM and Sequeim still have a duty to Plaintiff as they are furnishers of information to the credit bureau pursuant to 15 U.S.C. § 1681s-2

**§ 623. Responsibilities of furnishers of information to consumer reporting agencies.**

As heretofore stated, Defendants as furnishers of information had a duty to provide

-14-

accurate information and are prohibited from:

(A)    Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person ***knows or consciously avoids knowing that the information is inaccurate***. [Emphasis added]

(B)    Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer reporting agency if (I) ***the person has been notified by the consumer***, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate. [Emphasis added]

50.    Defendants further breached its duty to correct information upon learning of

its falsity or that same was dispute in a timely fashion.

(2) Duty to correct and update information. A person who:

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

51.    Additionally, Defendant failed to notify the credit reporting agency of the

notice  dispute, as required by  15 U.S.C. § 1681s-2 ,§ 623 (3) or that Plaintiff's account

was closed in contravention of its duty under §3, which provides:

(3)    Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, ***the person may not furnish the***

*information to any consumer reporting agency* without notice that such information is disputed by the consumer. [Emphasis added]

52.   Moreover, Defendant, did not notify the credit reporting agency, as a furnisher of information of the notice of dispute in a timely fashion as required by section **611(a)(2) [§ 1681i** of the Act, nor did it conduct an investigation.

(b)   Duties of furnishers of information upon notice of dispute.
(1) In general. After receiving notice pursuant to of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

(A) conduct an investigation with respect to the disputed information;

© report the results of the investigation to the consumer reporting agency; and

(D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

52.   Defendant did not conduct an investigation nor reinvestigation.  Morever, a debt collector is to cease all collection efforts when a written dispute is received. **15 U.S.C. § 1692g(b)**.  Defendants violated Plaintiff's rights with respect to the foregoing duties.

53.   Defendants further violated the **Fair Credit Reporting Act** by:

A.    Both  Credence Management and Sequeim reported the accounts as due and owing, therefore reporting two negative credit accounts for the same transaction(s)- the alleged DirecTV balance.

-16-

B.      Reporting an account due to A T & T, when Plaintiff never had a contract nor did business with A T & T.  Therefore, A T & T improperly reported a debt to a credit reporting agency, when no debt was owed to it and there was no privity of contract between Plaintiff and A T & T.    Plaintiff would show that A T & T, therefore provided inaccurate information credit information to its collection agent which was subsequently reported  to a credit reporting agency. Same was at the behest or direction of ATT.

54.     Plaintiff notified the credit reporting agencies, CRM, Sequeim and AT & T that the information reported by the alleged creditor, Defendants A T & T and DirecTV was false or that there was a discrepancy in reporting.

55.     In response, thereto, SAS, allegedly returned the debt to A T & T/DTV.

56.     Plaintiff would show that the debt was not owed, that the matter had been allegedly resolved per DirecTV, and that reporting of same violated the **Fair Credit Reporting Act**,  while attempts to collect said debt violated the **Fair Debt Collection Practices Act.**

57.     It is a violation of the **Fair Credit Reporting Act**  to report an invalid and an incorrect account.  It is further a violation of the law to indicate that a matter is resolved, with the alleged creditor owing nothing and  yet report same as a delinquent account.  Both acts are violative of **15 U.S.C. § 1681 et seq**.  Defendants, Sequiem and Credence did so, in contravention of the information provided by Plaintiff indicating the dispute of the account(s).

58.    Prior to all Defendant's placing the information on Plaintiff's credit report, Plaintiff was made an offer for a signature loan from her credit union.   Upon later attempting to accept the offer, said offer  was withdrawn and the signature loan was denied due to the information placed on Plaintiff's credit report by Sequeim and/or Credence on behalf of the other DTV/ATT.

59.    Defendants (ATT, DTV, CRM, and Sequeim) a) failed to follow procedures to ensure maximum possible accuracy; 2) the consumer report contained an inaccurate entry; 3)The consumer Plaintiff suffered injury; 4) the injury was caused, in part, by the inaccuracy.

60.    When information is obtained from the creditor (DTV/ATT) for reporting to a CRA (Consumer Reporting Agency), the information must be accurate and complete. 15 U.S.C. § 1681s-2(a)(2).  Moreover, Defendant DirecTV and A T & T was required by statute to report a dispute of the account, as well as the fact that the account was voluntarily closed but failed to do so in contravention **of  15 U.S.C. § 1681s-2(a)(4).** Therefore, DTV & ATT, as creditors and SAS and CRM as furnishers of information violated the law resulting in harm to the Plaintiff.

61.    The inability to obtain a loan at the time sought, was critical as Plaintiff was in the middle of a remodel and rehab project on her home and another property.  Renovations had already begun at the time that the loan denial had occurred, after a previous preapproval.  Same resulted in damage to her rehab project in an amount

in excess of $50,000.00.  Inability to complete the renovation led to the inability to sell her home, as planned, and move to the renovated house resulted in a loss  which would have netted Plaintiff an amount in or around $250,000.00-$325,000.00.

62.    Defendants failure to accurately report, investigate, and remove the information resulted in a decrease in Plaintiff's credit score, the denial of a loan, and resulting damage to her home and other building projects, resulting in a loss in excess of $50,000.00 (loan amount) coupled with inability to move and sell property, resulting in an aggregate loss in excess of $300,000.00.

63.    The Defendants have further engaged in violations of the **Fair Debt Collection Practices Act** in that it made repeated calls to Plaintiff at a number used a dedicated fax line number.  Said number was not a published number.  (See Exhibit B, attached and incorporated by reference, which shows the repeated calls to (979) 345-5461.

64.    Pursuant to **15 U.S.C. §§ 1692-1692p (The Fair Debt Collection Practices Act § 806**, the following constitutes harassment or abuse:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without
limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number

65.    Additionally, Defendant violated said provisionwhich requires a debt

collector to report the debt as disputed in any subsequent report or communication
pursuant to **15 U.S.C. §1682e(8)**.  Plaintiff contends that the Defendants did not.
Morever, CRM is prohibited from communicating to any credit reporting agency any debt
that it knows to be disputed. **15 U.S.C §1692e(8)**.  Said debt collector must also validate
the debt upon inquiry, which requires reporting the amount of debt, the creditor, and the
date of the debt.  Defendants failed to do so.

### BREACH OF CONTRACT/FRAUDULENT INDUCEMENT AND FRAUD

66.     Defendant contends in its response to Interrogatories, that the debt was for
early termination of a contract.  In order for there to be an early termination of a contract,
Plaintiff would have had to have entered into an express or implied contract, in which the
terms of the contract were specified, expressly indicating that the term of the contract
extended beyond the time that Plaintiff maintained the satellite service.  Under Texas law,
a contract exists if there is "(1) an offer, (2) an acceptance in strict compliance with the
terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5)
execution and delivery of the contract with intent that it be mutual and binding." **In re
Capco Energy, Inc**., 669 F.3d 274, 279-80 (5th Cir. 2012) .

67.     Plaintiff entered into a verbal agreement with Centurylink for the provision
of a bundled service including satellite TV, provided by DTV.  Acting on behalf of
DirecTV, Centurylink, together with DirecTV  induced Plaintiff to accept a bundle

package to include television services.  Said acts constituted fraudulent inducement to take the package.

68.    Said sales pitch failed to disclose other DTV fees for which Plaintiff would be charged.  Nor did information provided by Centurylink or DTV disclose that she would be charged early termination fee. Defendant, DirecTV nor CRM has produced any document signed by Plaintiff indicating that she agreed to be bound for billing for early termination.

69.  Same constitutes consumer fraud.  Defendants CRM and SAS are complicit in said fraud for attempting to collect a debt for a promised bundle benefit including DTV, which it failed to honor.

70.    Additionally, DTV has failed to establish that a contract existed between Plaintiff and DTV which would allow it to claim an early termination fee for breach of a contract. Plaintiff contends that there was no meeting of the minds nor execution and delivery of a contract with DTV.

71.    If indeed the Defendant alleges a breach of contract, inherent in said contract is an implied covenant of good faith and fair dealing. Defendant breached its contractual obligation of good faith and fair dealing, implied in all contracts, 1) by billing and collecting for unauthorized charges; 2) by failing to notify Plaintiff of the full terms of the contract by failing to disclose a Regional Sports fee and other fees; and 3) violating its mandate to participate in arbitration proceedings; 4) by stating that an agreement had been reached and then placing the information on Plaintiff's credit report.

72.     Plaintiff contends that any breaches of contract occurred by first breach of DTV by its failure to honor the agreement to zero out the account in lieu of arbitration, same constitutes a breach of contract and a breach of implied contract

## AGENCY AND INDISPENSABLE PARTY

73.     Plaintiff further alleges that an agency relationship existed between the Defendants A T & T and DirecTV (as principal) with Sequeim and Credence Resource Management, as agents or debt collectors.  Said relationship involved collecting debts allegedly owed to A T & T and/or  DirecTV by Sequeim and Credence and further reporting that information to credit reporting agencies on behalf of ATT, DTV, or CTC. Plaintiff concludes that an agency relationship existed between DirecTV and   CRM and SAS.   In order to establish an agency relationship, Plaintiff need only show (1) the  agent's authority to act on the principal's behalf and (2) the principal's right to control the agent. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017)." *Ahmed v. Bank of Whittier* (Tex. App. 2022).  It is clear that CRM and SAS acted on behalf of DirecTV and DTV controlled the collection acivities of SAS and CTM. However, its discovery responses fall  just short of declaring agency, by using verbiage of a "contract."  Despite a request for the production of said contract, Defendant CRM has failed to produce same.

74.     Dismissal prior to being allowed to develop that relationship during discovery is an act in contravention of the law. Even if not deemed to be in an agency

relationship, DirecTV and A T & T are indispensable parties to this litigation as they were the furnishers of information to SAS and CRM. Therefore dismissal of the parties from this action was premature

## TEXAS DECEPTIVE TRADE PRACTICES ACT

75.    Plaintiff would show that in addition to being  subjected to fraud, fraudulent inducement, breach of contract, etc., as set out supra, she has also been subjected to the following  violations of the *Texas Deceptive Trade Practices Act*  as found in the **Texas Business and Commerce Code** §17.46.   Plaintiff contends that the provisions outlined below occurred in the instant case, by the collective acts of CL, DTV, ATT, SAS, and CRM.

The *Texas Deceptive Trade Practices Act* provides in pertinent part:

Sec. 17.46.  DECEPTIVE TRADE PRACTICES UNLAWFUL.  (a)  False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(2)    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3)    causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

((12)    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

((20)    representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve, provided, however, that nothing in this subchapter shall be construed to expand the implied warranty of

-23-

merchantability as defined in Sections 2.314 through 2.318 and Sections 2A.212 through 2A.216 to involve obligations in excess of those which are appropriate to the goods;

(24)   failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

76.    Plaintiff acknowledges that the debt collector, CRM nor SAS caused the initial confusion or misunderstanding regarding the services provided by DTV and CL's roles therein.  Nor did these Defendants represent that the agreement between CL and DTV conferred rights or remedies, which it did not have,  However, CRM and SAS, by collecting a debt for an entity ATT or DTV with Plaintiff had no relationship , contractual or otherwise and failing to verify the debt and the creditor, allowed fraud to perpetuated against the plaintiff and was complicit in the actions of ATT and DTV to collect for an unjust debt, and therefore violated the above referenced provisions of the Texas Deceptive Trade Practices Act.

77.    Pursuant to **Texas Business & Commerce Code** §17.50, when a Defendant takes any of the foregoing actions, or a Plaintiff relies on the Defendants assertions to his detriment, or the Defendant engages in unconscionable conduct and does so willingly and knowingly, the Plaintiff is entitled to treble damages.

78.    Plaintiff contends that the conduct of the Defendants, SAS and CRM were unconscionable and caused her substantial loss, including but not limited to damages to

loss of good credit standing by reporting an improper debt to her credit report, damage to her homes due to inability to obtain a loan in connection therewith, , inability to sell the house in which she resided resulting in damages in the approximate range from $250,000.00 to $325,000.00, statutory damages as allowed pursuant to the **Fair Debt Collection Practices, Fair Credit Reporting Act** and any other acts stated herein, along with  emotional distress, and pain and suffering.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays for damages as set out below :

1.    Damages to Plaintiff's  credit rating in an amount to be determined;

2.    Damage to her properties' renovation project and to her home, due to  failure to procure loan proceeds ($50,000.00)  or settlement proceeds which would have allowed her projects to continue in an amount to be determined by the jury, but which exceeds $300,000.00.

3.    Damages to the rehabilitation project and the inability to move into the property in the approximate amount of $100,000.00

4.    Inability to sell plaintiff's home resulting in damages for said loss in the estimated amount of $250,000.00 to $325,000.00.

5.    All statutory damages allowed by law pursuant to statutory violation of the

statutes cited herein;

6.    Mental pain and suffering of all Plaintiffs.

7.    For such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ V.L.Davis

Veronica L. Davis
Fed. No. 29717
226 N. Mattson
West Columbia, Texas 77486
(979) 248-4583 (Cell)
vld57atal@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiff's Amended Original

Complaint has been sent to all opposing counsel via efiling on this the 19th day of

September, 2023.

/s/ V/L/Davis